## GILLESPIE v. THE STATE.

[No. 20,686. Filed April 4, 1907.]

1. CRIMINAL LAW.—*Former Jeopardy.—How Presented.*—Where the question of defendant's former jeopardy is once properly presented in a criminal case, it need not be repeated in order that defendant may become entitled to his rights thereunder. p. 308.

2. CONSTITUTIONAL LAW.—*Criminal Law.—Former Jeopardy.*— Section 14, article 1, of the Constitution denies to the courts the right to place any accused person twice in jeopardy for the same offense. p. 309.

3. CRIMINAL LAW.—*Jeopardy.—When Attaches.*—Jeopardy attaches, in a criminal case, when the defendant, legally charged with the commission of a crime, is given in charge of a lawfully impaneled and sworn jury for trial, in a court having jurisdiction to try the offense charged. pp. 309, 312, 319.

4. CONSTITUTIONAL LAW.—*Judicial Construction of Provision.— Adoption of Provision in Subsequent Constitution.*—Where the Supreme Court has placed a construction upon a provision of the Constitution, the subsequent adoption of such provision in a new Constitution imports that the framers adopted it impressed with such construction. p. 310.

5. CRIMINAL LAW.—*Jury.—Qualifications.—Relationship to Defendant.—Husband and Wife.*—A juror, remotely related to defendant's husband, is not related to defendant by marriage, after the death of such husband, and is not subject to a challenge for cause on account thereof under §1862 Burns 1901, cl. 4, §1793 R. S. 1881.  p. 318.

6. APPEAL. — *Criminal Law.—Rendering Judgment.—Homicide.* —Where the record on appeal affirmatively shows that defendant in a homicide case had been in former jeopardy for the offense charged, the Supreme Court will render a final judgment for defendant's discharge.  p. 320.

From Ohio Circuit Court; *Nicholas Cornet,* Special Judge.

Prosecution by the State of Indiana against James Gillespie.. From a judgment of conviction, defendant appeals. *Reversed.*

*John B. Coles, F. M. Griffith, Cynthia Coles Sink, Addison C. Harris* and *Harlan Cleveland,* for appellant.

*Charles W. Miller,* Attorney-General, *Harry R. McMullen, Cassius W. McMullen, William C. Geake, C. C. Hadley, Henry M. Dowling* and *Frank D. Johnston,* for the State.

JORDAN, J.—On December 22, 1903, a grand jury of the Ohio Circuit Court, duly qualified and impaneled, indicted appellant jointly with certain other persons, to wit, Belle Seward, Carrie Barbour and Myron Barbour, charging them with murder in the first degree, in this, that on December 8, 1903, at the county of Ohio, State of Indiana, they did then and there, with intent to kill and murder Elizabeth Gillespie, feloniously, purposely and with premeditated malice, shoot at and against said Elizabeth Gillespie with a certain deadly weapon commonly called a shotgun, etc., and did then and there and thereby purposely, feloniously and with premeditated malice, mortally wound said Elizabeth Gillespie, of which mortal wound she, at said county, on December 10, 1903, died, etc.

The record, so far as it may be said to relate to appellant, James Gillespie, discloses that on his appearance in court to answer to said charge he unsuccessfully pleaded in abatement, and that thereafter, upon being duly arraigned, he separately moved to quash the indictment. This motion was overruled, and thereupon he entered his plea of not guilty. The cause was set for trial on Monday, May 9, 1904, the same being the seventh judicial day of the May term, 1904, of the Ohio Circuit Court. On this latter day the following record of entry appears:

"State of Indiana
      v.
James Gillespie,
Belle Seward,
Carrie Barbour,
Myron Barbour.

Comes now the State of Indiana by Theodore Wulber, prosecuting attorney, and Cassius W. McMullen, deputy prosecuting attorney, Harry R. McMullen, and Henry N. Spaan, her attorneys, and the defendants come in their own proper persons and by Coles & Coles and F. M. Griffiths, their attorneys, and the impaneling of the jury having begun and not being completed the court directs the jury commissioners to draw a special venire of forty men."

On May 10, 1904, the same being the eighth judicial day of the aforesaid term of the Ohio Circuit Court, the following further proceedings were had in said cause, to wit:

"Comes now the State of Indiana, by her attorneys and the defendants in their own proper persons and by their attorneys also come, and the impaneling of the jury is continued and completed, and this case being at issue is now submitted for trial to the following named jurors [setting out the names], twelve good and lawful men, duly sworn to try the issues and a just verdict return according to law and evidence, and the further hearing of this case is postponed until 9 o'clock to-morrow morning."

On May 11, 1904, the following appears of record in said cause:

"Comes now the State of Indiana by the prosecuting attorney and the defendants also come in their own proper persons and by counsel, and the jury herein impaneled and sworn come also in charge of their bailiffs, * * * and now at this time, the jury herein having been impaneled and sworn but no evidence having been introduced or any statement of the case having been made to the jury, the prosecuting attorney filed his motion and affidavit for the setting aside of the submission herein."

This motion and affidavit, together with the rulings of the court and the exceptions and objections of appellant, are all incorporated in a bill of exceptions and thereby made a part of the record, and are as follows:

"State of Indiana, ⎫ SS.:
    Ohio County. ⎭
State of Indiana
   v.
James Gillespie,
Belle Seward,
Carrie Barbour,
Myron Barbour.

Comes now the State of Indiana through and by Theodore Wulber, the regularly elected prosecutor of the pleas of the State in and for said county and State, and by Harry R. McMullen, Cassius W. McMullen, and Henry N. Spaan, specially appointed by this court to assist in the prosecution of the above-entitled cause, and moves that the submission of said cause for trial be set aside for the reason following, to wit: That one Oscar Jones, a competent person to act as juror, was called to sit upon the jury impaneled to try said cause, and when said juror was interrogated by counsel for the State, touching his qualifications to sit as such juror in said cause, said juror answered under oath that he was not related, either by blood or by marriage, to any of the defendants in said cause,

when in truth and in fact he was related to one of said defendants, to wit, Belle Seward; that none of the attorneys for the prosecution knew of such relationship, nor had they any means of knowing of such relationship before said Oscar Jones was accepted and sworn in to act as juror in said cause; that within half an hour before said jury was sworn to try said cause said Jones made answer that he was not related to any of said defendants; that by reason of said facts the attorneys above named were not able and had no opportunity or time to ascertain that such relationship existed as stated herein; that said relationship is as follows: The mother of said juror was a first cousin of the mother of William Seward, deceased, the first and only husband of the defendant Belle Seward; that said juror made answer that he was not related to any of the defendants, and thereby misled counsel for the State, who would have challenged him for such cause had said juror disclosed such relationship; that said juror was accepted and sworn to try said cause at about 3 o'clock p. m., of May 10, 1904, and immediately thereafter said court adjourned; that shortly after said adjournment the counsel for the State, herein named, ascertained the truth of the facts hereinbefore stated, and at the first opportunity, that is, immediately at the reconvening of said court on the next day, to wit, May 11, 1904, presented this motion, and before any witnesses were sworn or any evidence heard. Wherefore the State of Indiana moves the court that the submission of said cause be set aside, with a view to reëxamination of said juror, Oscar Jones, upon his *voir dire,* and to give the State an opportunity to challenge said juror for cause as above stated." (Signed and verified by the attorneys for the State.)

The record further shows that this motion was argued by counsel for the State, submitted to the court, and by the latter sustained, to which ruling of the court in sustaining said motion and setting aside the submission of the cause to the jury, the defendants, and each of them, sev-

erally and separately excepted. Thereupon the State proceeded to examine the juror, Oscar Jones, as follows:

"Q. On yesterday you were asked the question whether or not you were related to any of the Gillespies, Sewards, or Barbours. At that time you answered, 'No, not at all.' Were you related to the deceased husband of Belle Seward?

A. Well, no, not what we call relation.

Q. Was not your mother a first cousin to the mother of William Seward?

A. No, not a first cousin.

Q. Not a cousin? What relation was your mother to the mother of William Seward?

A. Well, I can't just exactly tell you, but it was further back than that.

Q. You can't tell?

A. No, sir.

Q. Could you if you were given a little time? Could you figure it out?

A. No, sir, because we never considered ourselves any relation; never have figured out any relation.

Q. You are not, in your judgment, at least? Your mother and his mother were not first or second cousins?

A. No, sir, not that I know of. I don't think they were any relation at all."

At the close of this examination of the juror in question, the prosecuting attorney, in behalf of the State, said: "We will excuse Mr. Jones," and thereupon he was accordingly removed from the jury. To this peremptory challenge of said juror by the State the record discloses that appellant, and each of the other defendants, objected, for the reason that the answers of the juror showed that he was not related to either of the defendants, and that said submission was only set aside on account of the relationship to one of the defendants and not to enable the State to exercise further peremptory challenge. This objection was overruled by the court, to which ruling the appellant, and each of the other defendants, excepted, and tendered a joint bill

of exceptions embracing such action, rulings, and judgment of the court, and prayed that the same be signed, sealed, and made a part of the record, which was accordingly done on May 11, 1904, at the time of making said rulings.

Appellant and his codefendants then filed and presented to the court a written motion, whereby they each moved to be discharged from further prosecution in said cause and that they go acquitted, "for the reason that a jury was regularly impaneled, sworn, charged, and admonished by the court to try said cause; that since said impaneling, swearing, and charging of said jury, over the objection, exception, and protest of the defendants, and each of them, said submission was set aside, and, over the objection, exception, and protest of the defendants, and each of them, a juror, to wit, Oscar Jones, was excused peremptorily by the State, after having duly qualified by examination as to his competency, and retired from said jury. Wherefore the defendants, and each of them, state that they have once been in jeopardy for this same offense and the impaneling of another jury places them a second time in jeopardy for the same offense." This motion the court overruled, to which appellant and the other defendants severally excepted and presented their bill of exceptions thereon, which was signed and made a part of the record.

It further appears from the record that the impaneling of another jury in said cause was continued

"and the same not being completed and the special venires heretofore drawn herein having been exhausted, the court now orders that in addition a special venire of thirty names be drawn from the jury box, as provided by law," etc.

On the morning of May 12, 1904, appellant filed a separate answer, which, omitting the formal parts, is as follows:

"The defendant, James Gillespie, for special answer herein, says that on May 10, 1904, under the ·indictment heretofore returned in this cause he had pleaded not guilty of the charge as set forth in said indictment, and a jury of twelve good and lawful men had been duly and legally accepted and impaneled, charged and sworn to try said cause and were duly charged and instructed as to their duty during adjournment, and thereupon court adjourned at 3 o'clock p. m. until 9 o'clock a. m. of May 11, 1904; that the attorneys representing the State, on affidavit, moved the court to set aside the submission of this cause to said jury on account of alleged relationship between the defendant Belle Seward and Oscar Jones, and the court sustained said motion over the objection and exception of this defendant, and thereupon, over the objection and exception of this defendant, the court permitted the State, by its attorneys, peremptorily to challenge said juror; that, by a sworn statement of said Oscar Jones, he was a competent and legal juror, and by such peremptory challenge he was discharged from said jury over the objection and exception of this defendant, and other persons were summoned and examined as to their competency to sit as jurors in said case in place of said Oscar Jones. Wherefore, the defendant says that he has been once in jeopardy and that he is entitled to be discharged from arrest herein, and he prays judgment of discharge from arrest and that he go hence without day, and for all proper relief."

To this answer the State filed a demurrer, on the ground that said answer was insufficient in facts to constitute a cause of defense. This demurrer the court sustained, to which ruling the appellant excepted. The record then recites:

"And the impaneling of the jury having been completed, this case, being at issue, is now submitted to the following named jurors for trial [naming them], twelve good and lawful men, duly sworn to try the issues joined in this case, and a just verdict render according to law and evidence."

The trial of appellant and his codefendants before this second jury appears to have proceeded from day to day until May 29, 1904, when, after the jury had deliberated forty-nine hours, it was brought before the court and each juror answered that there was no possibility of agreement. The jury was thereupon discharged, appellant remanded to the custody of the sheriff, and .the cause was continued until the first day of the September term, 1904, of said court. On September 15, 1904, the same being a day in term, appellant, James Gillespie, moved for leave to file an amended supplemental answer of former jeopardy, and supported his application by affidavit. The answer which he asked leave to file presented the same facts, but with more detail, and raised the same question, as to his former jeopardy, as was presented by the answer hereinbefore set out. The State objected to the filing of this answer, which objection the court sustained, and appellant's motion for leave to file the answer was denied. Nothing more appears to have been done in the cause during said September term. On the first day of the December term, 1904, the State moved for an order for a special venire of 100 persons to serve as jurors. Appellant demanded, and was granted, a trial separate and apart from his codefendants. The cause was again set for trial on December 7, 1904. On that day appellant again filed his separate motion for discharge on account of former jeopardy. By this motion he showed to the court that at the December term, 1903, of the Ohio Circuit Court, a competent grand jury of said court, duly and legally impaneled, etc., had indicted him, together with Belle Seward, Carrie Barbour, and Myron Barbour, charging them jointly with having committed the crime of murder in the first degree, by killing and murdering Elizabeth Gillespie, etc. The motion further disclosed that the court held and adjudged said indictment to be good, valid, and sufficient against each of said defendants for murder in the first de-

gree; that appellant and his codefendants were duly arraigned thereon and for answer thereto had each entered pleas of not guilty. It further disclosed that on May 10, 1904, said cause being at issue, a jury, composed of twelve good and legally qualified men, was duly and legally impaneled and sworn to try said cause, and a true verdict return, etc. The action of the State in securing the court to set aside the submission of said cause, and the peremptory challenge by the State of the juror Jones, after his examination as hereinbefore shown, in regard to his relationship to Mrs. Seward, over the objections and exceptions of the appellant, are all fully shown in like manner as exhibited by the motion and answer hereinbefore set out. Upon the facts, appellant alleged that he had been once in jeopardy upon said charge of murder, and therefore he demanded that he be discharged from prosecution and go hence without day. This motion the court overruled, the reasons therefor, as stated, being that so much of the facts as related to former jeopardy had been embraced in previous motions and rulings of the court.

On December 14, 1904, a jury was impaneled and the record shows:

"Before the swearing of said jury the defendant James Gillespie objected to the swearing thereof, for the reason that he has been placed in jeopardy on the same charge set forth in the indictment herein, as shown by the records of this court in this cause."

This objection was overruled by the court, to which ruling appellant reserved an exception. The jury was thereupon sworn and the trial proceeded. At the proper time appellant offered to introduce and read in evidence the record of the court in the cause, showing the impaneling of the grand jury which indicted appellant, the return of a valid indictment, and all proceedings in said cause relative to and bearing upon his plea or defense of former jeopardy. His offer to introduce this record evidence in support

of said defense of former jeopardy was objected to by the State, and its objections were sustained by the court, to which ruling appellant excepted.

At the proper time appellant tendered to, and requested the court to give, the jury an instruction, wherein all of the undisputed facts as shown by the record in relation to the question of former jeopardy were set forth, or recited. This charge closed as follows:

> "You are therefore instructed that the above-recited facts amount to and constitute the placing of said defendant in jeopardy on the charge of murder, as set forth in the indictment of this cause, and he cannot legally be tried again for the same offense. You should, therefore, find the defendant not guilty."

This instruction the court refused to give to the jury, to which ruling appellant excepted.

The instruction in question apparently was requested upon the theory that the court in the case on trial would take judicial knowledge of its own records made in said cause, and of the legal effects of the proceedings as therein recorded. Under the circumstances, we think it may truly be said that appellant was diligent in presenting to the trial court, through the various methods employed, the question of his former jeopardy, and thereby availing himself of its legal effect. But, as disclosed by the record, the court, in each and every instance, decided adversely to him, to which rulings and decisions he duly objected and excepted, all of which rulings and exceptions have been properly made a part of the record herein and are presented for review under the several assignments of error. It may be said, in passing, that appellant, having once properly presented to the trial court the question of his former jeopardy, with a demand that he be discharged from further prosecution upon the offense with which he was charged, was not thereafter again required to repeat

such demand in order to render available the right which he asserted.

It appears that the jury impaneled at the December term, 1904, before which appellant was finally tried, after hearing the evidence and the argument of counsel, on January 5, 1905, returned into court a verdict finding appellant guilty as charged in the indictment, and assessing his punishment at imprisonment in the state prison for life. Over his motion for a new trial, wherein various reasons were assigned, the court rendered judgment on the verdict, and adjudged and ordered that appellant be imprisoned in the state prison during life, and that the State recover of him its costs laid out and expended. To the rendition of this judgment appellant excepted and objected.

Various questions in this appeal are presented for review by appellant's learned counsel, but the vital one is that which relates to the former jeopardy of appel-
2. lant. We, therefore, pass to the consideration of this question. Article 1, §13, of the first Constitution of this State, adopted in the year 1816, declared that "in all criminal prosecutions, the accused * * * shall not * * * be twice put in jeopardy for the same offense." This same provision is incorporated into article 1, §14, of the present Constitution, wherein it is declared that "no person shall be put in jeopardy twice for the same offense." Seven years prior to the adoption of the Constitution of 1851 the question arose, in the appeal of
3. *Weinzorpflin* v. *State* (1844), 7 Blackf. 186, as to when, within the meaning of the Constitution of 1816, an accused person in a criminal prosecution was subjected to the danger or jeopardy against which the provision in question is intended to shield or protect him. This court in that case, in a careful and well-considered opinion by Judge Dewey, said: "The courts of Pennsylvania and North Carolina differ from those of New York as to the meaning of the maxim and constitutional pro-

vision, that a man shall not be put twice in jeopardy for the same offense. The latter courts understand it to mean, that he shall not be twice *tried;* and they view the 'test, by which to decide whether a person has been once *tried,'* to be a plea of *auterfoits acquit,* or *auterfoits convict.* The former courts consider the hazard, danger, or peril in which a man shall not be twice placed, as having been once incurred by giving him in charge, on a legal indictment, to a regular jury, which has been unnecessarily discharged without rendering a verdict. *And this is the interpretation which we give to that clause of our constitution, which privileges an accused person from being 'twice put in jeopardy for the same offense.'* [Our italics.]   *   *   * The principle of construction adopted by the courts of Pennsylvania and North Carolina, and also by the circuit court of the United States in Shoemaker's case [*United States* v. *Shoemaker* (1840), 2 McLean 114, Fed. Cas. No. 16,279], will solve the difficulty. That principle, as before observed, is, that a man who has stood upon his defense on a valid indictment, before a legal jury which has been discharged without good cause, has incurred the first peril, and shall not incur the second by a subsequent trial."

With this interpretation, or construction, that the jeopardy intended or contemplated by the provision in question in the Constitution of 1816 attaches or commences whenever a person has been given in charge to a regular jury on a legal indictment, and the jury has been unnecessarily discharged, impressed or stamped upon this constitutional provision by the highest court of the State, the framers of our present Constitution readopted and incorporated it into article 1, §13. Under a well-settled rule a provision in a former constitution of a state, which has been interpreted or construed by the highest court thereof, and thereafter is readopted and incorporated into a new or later constitution, a court, where there

Gillespie *v.* State—168 Ind. 298.

is nothing to the contrary appearing, is justified in assuming and holding that, in the readoption of the provision in controversy, it was intended by the framers and ratifiers of the new or later constitution that the provision should have and be accorded the same interpretation or construction which was placed upon it by the highest court prior to its readoption. The same rule in this respect applies to the fundamental law as is applicable to a reënactment of a statute by the legislature which is impressed with a prior judicial construction. *Cain* v. *Allen* (1907), *ante,* 8, and cases cited: *Sanders* v. *St. Louis, etc., Anchor Line* (1888), 97 Mo. 26, 3 L. R. A. 390; *Ex parte Roundtree* (1874), 51 Ala. 42; *Attorney-General, ex rel.,* v. *Brunst* (1854), 3 Wis. 689; *Daily* v. *Swope* (1872), 47 Miss. 367; *Morton* v. *Broderick* (1897), 118 Cal. 474, 50 Pac. 644; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §403; Endlich, Interp. of Stat., §530.

If the constitutional convention of 1850, when it framed and adopted our present fundamental law, had not been satisfied to readopt and incorporate therein the provision in question, impressed or stamped as it was with the meaning placed upon it by the court in *Weinzorpflin* v. *State, supra,* it had the power, and certainly would have defined or declared therein, when the jeopardy contemplated or intended by the provision commenced or would be incurred by the accused person. That body, however, was apparently content to readopt the provision without declaring that it should bear any other meaning or interpretation than that accorded it by our predecessors in *Weinzorpflin* v. *State, supra.* The interpretation or construction in the latter case has been followed by this court in the following cases, wherein the question arose under the present Constitution: *Wright* v. *State* (1854), 5 Ind. 290, 61 Am. Dec. 90; *Miller* v. *State* (1856), 8 Ind. 325; *Morgan* v. *State* (1859), 13 Ind. 215; *Joy* v. *State* (1860), 14 Ind. 139; *McCorkle* v. *State* (1859), 14 Ind. 39; *State* v. *Walker*

(1866), 26 Ind. 346; *Kingen* v. *State* (1874), 46 Ind. 132; *Maden* v. *Emmons* (1882), 83 Ind. 331; *Adams* v. *State* (1884), 99 Ind. 244; *Boswell* v. *State* (1887), 111 Ind. 47.

The line where the jeopardy of the accused person commences, within the meaning of the constitutional provision as defined by the foregoing decisions, is in 3. harmony with the overwhelming weight of authority and the best considered cases by the courts of sister states. The opinion in *Wright* v. *State, supra,* was written by the late Governor Hovey, who was then a member of this court, and who had been a member of the constitutional convention of 1850. Wright, the appellant, was, on October 11, 1853, indicted for murder by a grand jury in the Elkhart Circuit Court. To this charge he pleaded not guilty, and on October 14 a jury was impaneled to try him. The trial appears to have proceeded until the succeeding Saturday, when the court, through inadvertence or misapprehension of the law, held that the legal term expired on that day, and, being satisfied that the trial could not be terminated before the close of that term, discharged the jury, over the objections of the accused, who insisted that the trial should proceed to its conclusion. The prisoner was remanded to jail and a new jury ordered for the next term of court. He applied for a writ of *habeas corpus,* and on the final hearing of this proceeding the judge remanded the prisoner to jail to await his trial in the circuit court. From this judgment he appealed. The court in that appeal said: "The facts, as presented by the record, require the investigation of two questions: (1) What was the effect of discharging the jury by the circuit court? (2) What is the duty of a judge upon a hearing of a case under a writ of *habeas corpus,* where the return shows that the applicant is held in custody, to answer an indictment?" The judgment of the lower court was affirmed upon the ground that under

the circumstances *habeas corpus* was not the proper remedy, and that as the circuit court still had jurisdiction over the prisoner it might discharge him on motion, or he might plead the discharge of the jury in bar of a second trial. In passing upon the question of former jeopardy in that appeal this court said: "There is some diversity of opinion in the decisions of the different courts as to what amounts to being put in jeopardy; but we are satisfied that the ruling of this court, in the case of *Weinzorpflin* v. *State* [1844], 7 Blackf. 186, is in accordance with reason and the current of authorities. Whenever a person shall have been given in charge, on a legal indictment, to a regular jury, and that jury unnecessarily discharged, he has been once put in jeopardy, and the discharge is equivalent to a verdict of acquittal."

In *Miller* v. *State, supra,* it was again held that the interpretation placed upon the clause "once in jeopardy," etc., by the court in *Weinzorpflin* v. *State, supra,* and *Wright* v. *State, supra,* must be considered as the settled law of this State.

In *Morgan* v. *State, supra,* the same construction was adhered to, the court therein saying: "When a valid indictment has been returned by a competent grand jury to a court having jurisdiction; the defendant has been arraigned and pleaded; a jury has been impaneled, sworn, and charged with the case; and all the preliminary things of record are ready for the trial; the jeopardy contemplated by the Constitution has then attached, and the defendant is entitled to a verdict."

In *Joy* v. *State, supra,* and *McCorkle* v. *State, supra,* the court repeated and affirmed the same rule. In *State* v. *Walker, supra,* the court reviewed all of the preceding cases, as well as other authorities, and therein said: "We fully concur in the opinion expressed in all those cases, that where the accused is put upon trial on a valid indictment, before a legal jury, and the jury is discharged by the

court without good cause, and without the consent of the defendant, he has incurred the first peril, and the discharge of the jury under such circumstances is equivalent to a verdict of not guilty, and bars another trial for the same offense."

In *Kingen* v. *State, supra,* it appears that the jury had been selected and agreed upon by the parties, had been sworn to try the cause, and then permitted to retire under the charge of a sworn bailiff, no evidence having been introduced and the case not having been stated to the jury. On the convening of court in the afternoon of that day it was discovered that one of the jurors was neither a freeholder nor a householder, although he had not been asked that question on his *voir dire.* The court thereupon directed this juror to retire from the jury box, and directed the sheriff to call another juror in his place, which was done, and the jury, as newly constituted, was sworn. Upon the discharge of the juror in question, and again on the jury's being sworn, the defendant unsuccessfully moved to be discharged. In the appeal in that case this court, in considering the question as to appellant's jeopardy under the circumstances, said: "We have seen that a verdict rendered by the jury first sworn would have been valid and binding. The defendant, doubtless, by the swearing of that jury was put in jeopardy, and she was entitled to have a verdict at their hands. If the court discharged them without sufficient legal reason and without the consent of the defendant, the conclusion seems to be irresistible that such discharge was equivalent to an acquittal of the defendant, and she could not rightfully be put upon trial again for the same offense."

In *Maden* v. *Emmons, supra,* it was affirmed that "when an accused is put to trial upon a valid indictment, and all the preliminary steps essential to the validity of the trial have been taken, the jeopardy attaches from the moment the trial is begun, and the trial is deemed commenced at the time the jury is impaneled." Citing authorities.

In *Adams* v. *State, supra,* one Crandall was placed on the jury. He was not specially interrogated as to his qualifications as a juror, but other jurors, called to serve with him in the case, were so interrogated in his presence and hearing. Before the jury was sworn the court, upon its own motion, inquired whether all were either freeholders or householders of the county, to which there was a general response in the affirmative. After the jury in that case was sworn, but before any statement had been made and before any further proceedings of any kind had been had, Crandall informed the court that he had by inadvertence incorrectly answered the court's inquiry as to his qualifications as a juror, that, in fact, he was neither a freeholder nor a householder. The court then inquired of the defendant whether he objected to Crandall's serving as a juror on account of the information which he had given the court in regard to his qualifications. To this inquiry the defendant, through his attorneys, responded: "We decline to change the jury." Thereupon the court, over the objections and exceptions of the defendant, discharged the jury, and the defendant then unsuccessfully moved that he be discharged and permitted to go hence without day, upon the ground that he had been once placed in jeopardy, etc. The court proceeded to impanel another jury to try the cause, which resulted in finding defendant guilty as charged and fixing his punishment at imprisonment in the state prison. On the appeal in that case the court said: "It is also well settled that when the ordinary forms of law have been complied with, jeopardy attaches when the jury is sworn. * * * When jeopardy has begun, and the jury are unnecessarily and without the consent of the prisoner discharged, such a discharge of the jury is the equivalent of an acquittal, and the prisoner thereby becomes entitled to exemption from further prosecution for the same offense." It was held in that case that the court erred in overruling appellant's motion for dis-

charge and that all subsequent proceedings based upon the indictment in consequence thereof were erroneous, the judgment below was reversed and the cause remanded, with instructions to the court below to discharge the accused.

In *Boswell* v. *State, supra,* the defendant was arrested and taken before a justice of the peace, where, being arraigned, he entered a plea of guilty. The prosecuting attorney then dismissed the case over defendant's objection and caused him to be indicted by a grand jury. He set up the record made before the justice of the peace as constituting former jeopardy, and his plea was sustained, on the ground that the voluntary dismissal of the case by the prosecuting attorney was equivalent to an acquittal. The following cases and authorities are in harmony with our own decisions, as they hold or affirm the doctrine that in a criminal prosecution the unnecessary discharge of the jury, after it has been impaneled and sworn, without the consent of the defendant, operates as an acquittal: *Commonwealth* v. *Fitzpatrick* (1888), 121 Pa. St. 109, 15 Atl. 466, 1 L. R. A. 451, 6 Am. St. 757; *State* v. *Callendine* (1859), 8 Iowa 288; *Hines* v. *State* (1873), 24 Ohio St. 134; *Helm* v. *State* (1889), 66 Miss. 537, 6 South. 322; *State* v. *Mc-Kee* (1830), 1 Bailey (S. C.) 651, 21 Am. Dec. 499, and cases cited in notes; *State* v. *Robinson* (1894), 46 La. Ann. 769, 15 South. 146; *Robinson* v. *Commonwealth* (1899), 88 Ky. 386, 11 S. W. 210; *People* v. *Cage* (1874), 48 Cal. 323, 17 Am. Rep. 436; *Ex parte Clement.* (1873), 50 Ala. 459; *Bell* v. *State* (1870), 44 Ala. 393; *Ex parte Maxwell* (1876), 11 Nev. 428; *Whitmore* v. *State* (1884), 43 Ark. 271; *Ward* v. *State* (1839), 1 Humph. (Tenn.) *253; *O'Brian* v. *Commonwealth* (1872), 9 Bush (Ky.) 333, 15 Am. Rep. 715; *State* v. *Richardson* (1896), 47 S. C. 166, 25 S. E. 220, 35 L. R. A. 238; *Hilands* v. *Commonwealth* (1887), 114 Pa. St. 372, 6 Atl. 267; *State* v. *Sommers* (1895), 60 Minn. 90, 61 N. W. 907; *Schrieber* v. *Clapp* (1903), 13 Okla. 215, 74 Pac.

316; *People* v. *Dolan* (1883), 51 Mich. 610, 17 N. W. 78; *Ex parte Tice* (1897), 32 Ore. 179, 49 Pac. 1038; *State* v. *Steeves* (1896), 29 Ore: 85, 43 Pac. 947; *People* v. *Taylor* (1898), 117 Mich. 583, 76 N. W. 158; *Commonwealth* v. *Tuck* (1838), 20 Pick. 356; *Kepner* v. *United States* (1904), 195 U. S. 100, 24 Sup. Ct. 797, 49 L. Ed. 114; *Allen* v. *State* (1906), (Fla.), 41 South. 593, and authorities cited; *Lee* v. *State* (1870), 26 Ark. 260, 7 Am. Rep. 611; *McDonald* v. *State* (1891), 79 Wis. 651, 48 N. W. 863, 24 Am. St. 740, and authorities cited; *People* v. *Ny Sam Chung* (1892), 94 Cal. 304, 29 Pac. 642, 28 Am. St. 729; Gillett, Crim. Law (2d ed.), §31; 1 Bishop, Crim. Law (8th ed.), §§1012-1014 *et seq.;* Clark, Crim. Law, p. 374; 12 Cyc. Law and Proc., 270; 17 Am. and Eng. Ency. Law (2d ed.), 584; Cooley, Const. Lim. (7th ed.), 467, 468.

Judge Cooley, in the work last cited, said: "A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impaneled and sworn."

That the decisions of this court to which we have referred are, under the facts in this appeal, controlling upon the result, and that there is no escape from their force and effect is certainly manifest. To recapitulate, the certified record in this case, which comes to us impressed with absolute verity, discloses the following facts: A valid and sufficient indictment, charging appellant and his codefendants with the crime of murder in the first degree, was returned into the Ohio Circuit Court by a proper and competent grand jury. The latter court had complete jurisdiction over the offense charged, and acquired jurisdiction over the person of appellant. He was arraigned upon the indictment in open court, unsuccessfully moved to quash the

pleading, and thereupon entered his plea of not guilty. The cause being ready for trial, a jury was legally impaneled and accepted by the State and appellant, and was then duly sworn to try the cause and a true verdict return according to the law and the evidence. At this stage, the court adjourned until the following day. On the convening of the court the next morning the State, by its attorneys, moved to set aside the submission "with a view [as stated in the motion] to the reëxamination of said juror, Oscar Jones, on his *voir dire,* and to give the State an opportunity to challenge said juror for cause." The reason alleged in the motion for setting aside the submission was that the mother of said juror was a first cousin of William Seward, the deceased husband of Mrs. Seward, one of appellant's codefendants. By the showing made by this motion it was apparent that whatever relationship, if any, might have previously existed between the juror in question and Mrs. Seward by reason of her marriage to William Seward, it had, as between her and said juror, terminated on the death of her husband, whereby the marriage was dissolved. That such relationship, if any, by affinity as between her and said juror, ceased with the dissolution of the marriage by which it was created, is well settled. *Trout* v. *Drawhorn* (1877), 57 Ind. 570, and authorities cited; Gillett, Crim. Law (2d ed.), §835, and authorities cited.

The motion was sustained by the court over the express objection and exception of appellant, and the State was then permitted by the court to examine the juror in regard to the relationship imputed to him. He, as shown, virtually denied that any relationship ever existed between him and Mrs. Seward's husband. In fact, it may be said that the State wholly failed to show upon the examination that any such relationship ever existed as would entitle it to challenge the juror for cause under the fourth subdivision of §1862 Burns 1901, §1793 R. S. 1881, but the

court permitted the State peremptorily to challenge the juror and remove him from the jury as impaneled and sworn, all over the express objection and exception of appellant, and a new jury was subsequently impaneled and sworn to try the cause. The State, by peremptorily challenging this juror, thereby apparently recognized that it had no statutory cause for challenge. If, after the unsuccessful attempt on the part of the State to establish that the juror was disqualified by reason of relationship, the court had not allowed the State to challenge or remove him from the panel, but had permitted the trial to proceed before the jury originally impaneled, we would be confronted with a different question. Under the circumstances, the act of the trial court in removing the juror in question operated, in effect, to break down and destroy the jury into whose hands appellant had been given in charge and from which body, in the absence of any absolute or legal necessity arising, he was entitled to have a verdict returned. That, in view of the law of this State, as settled by our decisions, he, under the facts, incurred or was subjected to the jeopardy contemplated or meant by the constitutional provision in question, is certainly evident, and there is no room for controversy to the contrary. The jeopardy contemplated, our decisions affirm, attaches from the very moment the trial is begun, and the trial is deemed to have commenced at the time the jury is impaneled. It follows, therefore, that appellant was as actually in jeopardy when the jury was discharged as he would have been had the introduction of the evidence been completed at that time. That no legal necessity whatever is shown to have existed for the discharge of the jury over appellant's objections, is certainly manifest, and this question might be said to merit no further consideration. If, under the circumstances in this case, it could be affirmed that such a legal necessity for the discharge of the jury without appellant's consent is shown to have arisen, then it would be an

easy matter for a prosecuting attorney, in the midst of a criminal trial, to create a necessity for the discharge of the jury on the ground that the state's evidence was weak, but could be made stronger on another trial, or that some of his witnesses were absent, etc., and for these reasons secure the discharge of the jury and subsequently place the accused party upon trial for the same offense. If such procedure could be sustained, then it might truthfully be said that the constitutional provision in question is as empty as a bubble and of no avail in protecting an accused person against twice being put in jeopardy for the same offense. That the discharge of the jury under the circumstances in this case was wholly unwarranted on the part of the learned trial judge, and must be held to operate in effect as an acquittal of appellant and a bar to any further or subsequent prosecution for the same offense, cannot be denied. Were we to hold otherwise, our decision would manifestly contravene the constitutional guaranty which shields an accused person against being twice put in jeopardy for the same offense. The State does not attempt to justify the action of the trial court upon any legitimate ground. In fact the Attorney-General, in his oral argument, asserted that the question involved was "one for this court" and was for us to do what we deemed best. But the question presented is not one over which we may exercise a discretion in its determination, but we are compelled to voice the mandate of our fundamental law and award to appellant his rights thereunder.

For the error of the trial court in refusing to discharge appellant on the ground that he had been once in jeopardy for the offense in controversy, the judgment is reversed, and, as the facts in respect to that question are verified by the record and are before us undisputed, the cause is, therefore remanded, with instructions to the lower court to enter an order or judgment that appellant be discharged from further prosecution on the charge in question and that he go hence without day.