MADDOX *v.* STATE OF INDIANA.

[No. 28,752. Filed December 4, 1951.]

*Jones & Cook,* of Kokomo, for appellant.

*J. Emmett McManamon,* Attorney General; *John Ready O'Connor* and *George W. Hand,* Deputy Attorneys General, for appellee.

JASPER, J.—Appellant was charged by second amended affidavit with vehicle taking, under §10-3010, Burns' 1942 Replacement. He entered a plea of not guilty and served notice of an alibi. Later a special answer setting out that appellant was being placed in jeopardy twice for the same offense was filed. The cause was tried by jury, a verdict of guilty of vehicle taking was returned, judgment was entered, and sentence followed.

Appellant, under his assignment of errors, contends that he has been placed in jeopardy twice for the same offense.

The record reveals the following:

"And this cause being at issue and called for trial the same is now submitted to a jury for trial composed of the following named men and women, to-wit:—C. M. Job, Virgil Heckman, Lena Leafgreen, Joe Teal, Sally Davidson, J. Ord Fortner, Robert E. Chambers, Mable Fleenor, Charles Hamilton, E. R. Rouch, Ancil J. Walker, and Xen Pence, twelve disinterested freeholders or householders and qualified voters of Howard County Indiana who are examined, accepted and duly sworn to try said cause. . . .

"Comes now W. Dan Bretz, Prosecuting Attorney for the 62nd Judicial Circuit and makes the opening statement on behalf of the State of Indiana.

"The opening statement on behalf of the State of Indiana made by Mr. Bretz was interrupted by

juror, Charles Hamilton, who asks permission to speak with the court.

"The following questions were asked by the court:

"Q. You were the one who asked to speak?

"A. Yes. I would like to explain that it was a misunderstanding, I never heard this boy Hamilton called 'Scotty' before. Estranged from family for quite awhile when he mentioned the name 'Everett', he's my nephew, I wouldn't want to go on.

"The Court now excuses the jury.

"11:10 A.M. Jury in the box.

"Jury is recalled and recessed until 1:30 P.M.

"At this time the Court now instructs the Jury not to discuss the cause with anyone and if anyone insists on talking to them to report their name to the Court.

"1:30 P.M. Jury in the box.

"The Court now asks Mr. Cook, Attorney for the defense, if he has anything to file and he answers, 'Not at this time.'

"2:05 P.M. Jury in the box.

"The Court again asks Mr. Cook if he has any papers to file and Mr. Cook replies as follows: 'The defense at this time awaits any action by the State.'

"The Court now asks Mr. Bretz, Prosecuting Attorney the following:

" 'Do you have any action to take?'

"Mr. Bretz replies, 'Does the defense mean it waives any action?'

"By Mr. Cook: 'The defense is neither waiving or committing itself at this time.'

"By Mr. Bretz: 'Does the defense desire to proceed with the trial with this jury?'

"By the Court: 'He has no motion.'

"By Mr. Cook: 'If he proceeds I will have no objection, I'll wait and see what he does. Nothing for me to object to at this time.'

"By the court: There being no motion the Prosecutor is instructed to proceed with his opening statement.

"(At this time Mr. Bretz gets up and walks to the center of the Jury Box, preparatory to continuing with his opening statement.)

"By Mr. Cook: 'The defendant objects for the reason he cannot have a fair and impartial trial for the reason Mr. Charles Hamilton, juror, stated he is an uncle to a co-defendant, and a party who is a witness in this trial, that's my objection.'

"By the Court: 'An objection to continuance?'

"By Mr. Cook: 'An objection.'"

Appellee then filed a verified written motion to withdraw the submission of the cause from the jury, "for the sole and only purpose of determining the qualifications of the said juror to serve, and no other."

The record further reveals:

"Said motion being at issue, same is now submitted to the Court for hearing and the Court having examined the same, does now grant the motion, and submission is now withdrawn for further interrogation by Charles M. Hamilton, only.

"By Mr. Cook: 'Defendant objects for the reason, if the withdrawal of the case is taken from the jury it requires a complete new examination of the jury as in the first instance giving the defendant the right to examine the jury in full and move for the removal of any juror for cause of preemptory challenge. Defendant further objects for the reason that the jury as it is empannelled and duly sworn and this defendant has been placed in jeopardy and now objects to withdrawal of submission of the cause and the ruling of the Court thereon. Defendant doesn't care to question Mr. Hamilton for the reason he is a duly sworn impanelled juror and as such it is not in the province of the State of Indiana or the defendant to interrogate further.'

"By the Court: 'Mr. Bretz, do you have any questions to ask of the jury?'

"By Mr. Bretz: 'This jury is satisfactory.'

"At this time the Jury is again sworn in by the Court.

"Mr. Cook asks for a few minutes recess in order that he may prepare a petition setting out his client, the defendant herein, to be in double jeopardy.

"The Court grants the recess requested, and excuses the Jury at this time."

Appellant then filed a verified written affirmative answer of double jeopardy, to which verified answer appellee filed a verified reply setting out substantially the same facts as above set out. The prosecuting attorney then completed his opening statement.

■ The question is properly presented as to whether or not appellant was put twice in jeopardy.[1]

Under the facts as above set out in this case, we must therefore decide when jeopardy attached. This ■ court has decided on numerous occasions that when a person is properly charged with a crime, has been arraigned and pleaded to such charge, has been put upon his trial before a tribunal properly organized and competent to try him for the offense charged, and a jury has been impaneled from persons competent to sit on the trial and duly sworn, then jeopardy attaches. *Armentrout* v. *State* (1938), 214 Ind. 273, 275, 15 N. E. 2d 363; *Gillespie* v. *State* (1907), 168 Ind. 298, 80 N. E. 829; *Adams* v. *State* (1884), 99 Ind. 244. The court, in *State* v. *Reed* (1907), 168 Ind. 588, 589, 590, 81 N. E. 571, said:

---

[1] See 38 A. L. R., p. 706, Annotation. Plea of former jeopardy where jury discharged because of misconduct or disqualification of one or more of their number.

"It is well settled in this State that when a defendant in a criminal prosecution is put upon his trial on a valid charge in a court having jurisdiction of the subject-matter and the parties, and the cause is dismissed over his objection, the same is equivalent to an acquittal, and he has been put in jeopardy, within the meaning of §14, article 1, of the Constitution of this State, and cannot again be put in jeopardy for the same offense."

It has also been decided by this court, in *State* v. *Wamire* (1861), 16 Ind. 357, that:

"The following points of criminal law are settled in this State:

"1. If the Court, without the consent of the defendant, discharge the jury to whom his cause has been submitted, before verdict, no imperious necessity rendering such discharge necessary, it works an acquittal of the defendant . . . ."

In *Adams* v. *State, supra,* this court said (page 245 of 99 Ind.) :

"It is a well settled rule that all objections to the competency of a juror are waived by neglecting to use due diligence in urging them as well as by the failure of the party, afterwards complaining, to avail himself of such objections at the proper time, after they have come to his knowledge. (Citing cases.)

"That rule applies especially to that class of disqualifications which arise from a proposed juror not being either a freeholder or householder, or a voter of the county. It is also well settled that when the ordinary forms of law have been complied with, jeopardy attaches when the jury are sworn. 1 Bishop Crim. Law, section 1014; 1 Bishop Crim. Proc., section 961; *Maden* v. *Emmons,* 83 Ind. 331.

"When jeopardy has begun, and the jury are unnecessarily and without the consent of the prisoner discharged, such a discharge of the jury is the equivalent of an acquittal, and the prisoner

thereby becomes entitled · to exemption from further prosecution for the same offence."

Jeopardy attached in the case at bar when the jury was first sworn.

The proper procedure for *a defendant* ·in objecting to a juror, after the jury had been impaneled and sworn, was decided by this court ˙ in *Kurtz* v. *State* (1896), 145 Ind. 119, 42 N. E. 1102. In that case, after the jury had been impaneled and sworn to try the cause, a juror approached the judge and, in substance, stated that, since listening to the opening statement, he thought he might have talked about the case. The defendant then moved the court to examine the juror. The prosecuting attorney objected, stating that the proper motion was to set aside the submission. The court allowed the examination of the juror. After examination, the defendant challenged the juror for cause, which the court overruled. The defendant then peremptorily challenged the juror, which the court also overruled. The defendant claimed that it was error to overrule his peremptory challenge. On appeal, this court said (page 122 of 145 Ind., page 1103 of 42 N.˙E.) :

"We think, however, that in this case ˙the appellant did not pursue the proper course. After the acceptance of the jury, and after they are sworn to try the cause, it is too late to examine them as to their competency, or to peremptorily challenge any of their number,˙ unless there be first interposed a motion to set aside the submission. Had there been, in this case,˙ a motion to set aside the submission of the cause ˙to the jury, with a view to the re-examination of ·this juror on his *voir dire,* and had the court overruled such motion, we should have a very different case before us.˙ ˙

"Nor was it by any oversight or ·inadvertence that counsel did not make the proper· motion. ·The motion that should have been made was suggested by the prosecuting· attorney, ·and the court inti-

mated that such motion to set aside the submission to the jury might be made, in case it was desired, after the juror should be examined. Counsel for appellant, however, did not seek to avail themselves of such right to move the setting aside of the submission, either before or after the juror's examination. Certainly the juror to whom the cause had been submitted could not be excused, and another juror, to whom it had not been submitted, put in his place. *The cause must be submitted to the jury as a whole; and to re-examine any juror it would first be necessary to set aside the submission to the jury. The jury would then be in the condition in which they were before they were sworn.*" (Our Italics.)

In the case at bar, appellant's objection to the juror was improper. The proper procedure, as above set out, required appellant to object, and request the withdrawal of submission.[1a] His failure to request such withdrawal would waive his objection. *Kurtz* v. *State, supra.* Did appellant expressly or impliedly consent to the withdrawal of submission, or was there such legal necessity for the court to withdraw the submission without the consent of appellant?

In the case of *Gillespie* v. *State* (1907), 168 Ind. 298, 80 N. E. 829, *supra,* in which the facts were similar to the case at bar, the prosecuting attorney filed a motion to withdraw the submission for the purpose of reexamining a juror as to his relationship to one of the defendants, and the court, over the objection of the defendants, granted the motion to withdraw the submission, whereupon the State proceeded to question the juror. After the questioning, the State peremptorily challenged the juror. The juror was then removed from the jury. The defendants objected to the peremptory challenge and to the withdrawal of the juror. A writ-

---

[1a] See "Jury discharged," Acts 1905, ch. 169, §269, p. 643; §9-1814, Burns' 1942 Replacement.

ten motion was made by the defendants to be discharged and acquitted. Another juror was then placed in the jury box and the jury resworn. This court, among other things, said (pages 319, 320 of 168 Ind., pages 836, 837, of 80 N. E.) :

"Under the circumstances, the act of the trial court in removing the juror in question operated, in effect, to break down and destroy the jury into whose hands appellant had been given in charge and from which body, in the absence of any absolute or legal necessity arising, he was entitled to have a verdict returned. That, in view of the law of this State, as settled by our decisions, he, under the facts, incurred or was subjected to the jeopardy contemplated or meant by the constitutional provision in question, is certainly evident, and there is no room for controversy to the contrary. The jeopardy contemplated, our decisions affirm, attaches from the very moment the trial is begun, and the trial is deemed to have commenced at the time the jury is impaneled. It follows, therefore, that appellant was as actually in jeopardy when the jury was discharged as he would have been had the introduction of the evidence been completed at that time. That no legal necessity whatever is shown to have existed for the discharge of the jury over appellant's objections, is certainly manifest, and this question might be said to merit no further consideration. If, under the circumstances in this case, it could be affirmed that such a legal necessity for the discharge of the jury without appellant's consent is shown to have arisen, then it would be an easy matter for a prosecuting attorney, in the midst of a criminal trial, to create a necessity for the discharge of the jury on the ground that the State's evidence was weak, but could be made stronger on another trial, or that some of his witnesses were absent, etc., and for these reasons secure the discharge of the jury and subsequently place the accused party upon trial for the same offense. If such procedure could be sustained, then it might truthfully be said that the constitutional provision in question is as empty

as a bubble and of no avail in protecting an accused person against twice being put in jeopardy for the same offense. That the discharge of the jury under the circumstances in this case was wholly unwarranted on the part of the learned trial judge, and must be held to operate in effect as an acquittal of appellant and a bar to any further or subsequent prosecution for the same offense, cannot be denied. Were we to hold otherwise, our decision would manifestly contravene the constitutional guaranty which shields an accused person against being twice put in jeopardy for the same offense."

In the case at bar appellant did not ask for the withdrawal of the submission, and, further, objected to the court's ruling withdrawing the submission. The withdrawal of the submission to examine the juror was not only done without the consent of appellant, but over his objection. The record, as above set out, further shows that neither appellee nor appellant examined the juror after the withdrawal of submission. Appellee (State of Indiana), who had made the motion for withdrawal of submission, immediately accepted the jury and the juror without further questions. This, in itself, showed that there was no legal necessity for the withdrawal of submission. *Armentrout* v. *State* (1938), 214 Ind. 273, 15 N. E. 2d 363, *supra.*

If appellant had consented to the withdrawal of submission, then he could not be heard to complain, nor could he complain on appeal where he objected[2] only, but does not ask for withdrawal of submission. Where the court withdraws the submission without the express or implied consent of the defendant, then there must be shown a legal necessity

[2] For waiver of objection, see *Henning* v. *State* (1886), 106 Ind. 386, 6 N. E. 803, 7 N. E. 4.

for the withdrawal of submission.[3] From the objection of appellant to the withdrawal of submission, we must find that he did not expressly or impliedly consent to the withdrawal. Although the United States Supreme Court, in *Wade* v. *Hunter* (1949), 336 U. S. 684, 69 S. Ct. 834, 93 L. Ed. 974, has held that it is within the sound discretion of the trial court to determine the necessity of discontinuance of trial, there still must exist a legal necessity for withdrawal of the submission without the consent of the defendant. *State* v. *Leunig* (1873), 42 Ind. 541. In the case at bar, the State, and not appellant, made the motion for withdrawal. The trial court should have determined the question of whether there existed a legal necessity before granting appellee's motion to withdraw the submission, and the facts constituting the legal necessity should have been shown of record. *State* v. *Leunig, supra;* *State* v. *Nelson* (1866), 26 Ind. 366.

It was error for the trial court to withdraw the submission from the jury without either the consent of appellant or the existence of a legal necessity. Appellant has been placed twice in jeopardy.

Judgment reversed, with instructions to the trial court to enter judgment that appellant be discharged from further prosecution on the charge.

Draper, J., dissents.

## DISSENTING OPINION

DRAPER, J.—Given regularity up to that point, when a jury has been duly impaneled and sworn to try a criminal case, the accused is in jeopardy. If, thereafter, the jury is *discharged* without the consent of the ac-

---

[3] See 23 C. J. S., Criminal Law, §1384, p. 1061.

cused, and in the absence of any legal necessity for so doing, the accused cannot *again* be placed in jeopardy for the same offense.

This is not that kind of a case.

Boiled down to its essentials, the rule of all the cases is that an accused is entitled to have a trial completed and a verdict returned by the jury first impaneled and sworn to try him, and a verdict at their hands is valid and binding so far as former jeopardy is concerned. See *Kingen* v. *The State* (1874), 46 Ind. 132; *Gillespie* v. *State* (1907), 168 Ind. 298, 80 N. E. 829; *Baker* v. *Commonwealth* (1939), 280 Ky. 165, 132 S. W. 2d 766, 125 A. L. R. 691.

The first and only jury impaneled and sworn to try this case did try the case. It was never discharged and never even separated until it was discharged in due course *after it had returned a verdict.* Here there was one charge, one plea, one trial and one verdict returned by the one and only jury ever impaneled and sworn to try the case. I have seen no decision holding that under such circumstances a case of double jeopardy is presented. The majority opinion cites none and I take it none can be found. The closest case on its facts that I have been able to find is that of *Lovato* v. *New Mexico* (1916), 242 U. S. 199, 37 S. Ct. 107, 61 L. Ed. 244. There Lovato on November 9, 1910 pleaded not guilty to an indictment for murder. On April 24, 1911, without withdrawing the plea, he demurred to the indictment on the ground it charged no offense. The demurrer was overruled and the jury was impaneled and sworn to try the case. The witnesses were also sworn. It thereupon appearing to the district attorney that Lovato had not been arraigned and had not pleaded since the overruling of the demurrer, the court upon motion dismissed the jury and directed that the defendant be arraigned and plead. The accused was

accordingly again at once arraigned. He entered a plea of not guilty, and, both sides announcing themselves ready for trial, the same jury previously impaneled was again sworn and the trial proceeded. The defendant moved for a directed verdict on the ground that he had been formerly placed in jeopardy for the same offense, claiming that in the same case a jury had been impaneled and sworn and thereafter had been dismissed from a consideration of the case. In an opinion by the Chief Justice the Supreme Court held that the contention that the accused was twice put in jeopardy was wholly without merit. The court said there was at best a mere irregularity of procedure which deprived the defendant of no right. It called attention to the fact that the confusion was brought about by an over cautious purpose on the part of the court to protect the rights of the accused, and whether under the circumstances it was a necessary formality to dismiss the jury in order to enable the accused to be again arraigned and plead, the action was clearly within the bounds of judicial discretion. It would thus appear that where a jury is impaneled and sworn to hear and decide a cause, and it does hear and decide it, a mere irregularity of procedure which deprives the accused of no right cannot be translated into double jeopardy. To me that case is persuasive authority.

Moreover, I can find no fault with the procedure followed by the trial court in this case. It seems to be indicated by the opinions of this court. In *Gillespie* v. *State, supra,* the submission was set aside on the *state's motion* and a juror was further examined on his *voir dire.* The examination of this juror disclosed no legal necessity for discharging him, but he was peremptorily challenged by the state. Another juror was thereupon selected to complete the panel. The court says at page 319:

"If, after the unsuccessful attempt on the part of the State to establish that the juror was disqualified by reason of relationship, the court had not allowed the State to challenge or remove him from the panel, *but had permitted the trial to proceed before the jury originally impaneled, we would be confronted with a different question.* Under the circumstances, the act of the trial court *in removing the juror* in question operated, in effect, to break down and destroy the jury into whose hands appellant had been given in charge and from which body, in the absence of any absolute or legal necessity arising, he was entitled to have a verdict returned." (My emphasis)

It seems apparent from the foregoing language that the setting aside of the submission would not operate as a discharge of the jury, for the court in effect says that had the trial proceeded before the jury originally impaneled to try the case, no question of double jeopardy would have arisen. It is clear that the court did not find double jeopardy in the fact that the submission was set aside. It found double jeopardy in the removal of a juror who was not shown to be disqualified. And that seems to be the rule of all the cases.

The court clearly indicates in *Kurtz* v. *The State* (1896), 145 Ind. 119, 42 N. E. 1102, that the proper procedure when a situation like the present arises is to set aside the submission and ascertain the facts. The majority opinion says the court should determine the question of the existence of legal necessity, when the question is raised by the state, before the granting of a motion to withdraw the submission. It would seem to me that a juror could be questioned in order to arrive at the facts, but just how a juror may be examined on his *voir dire* after he has been sworn to try the case, without first setting aside the submission, is not made clear in the majority opinion.

The cases talk about the "discharge" of the jury. The majority opinion seems to be based on the premise that the setting aside of the submission is the same as, or is equivalent to, the discharging of the jury. Such is not the case. When a jury is discharged it is relieved of all further duties. Its connection with the case is severed. It is all through. The effect of setting aside the submission is, as explained in *Kurtz* v. *The State, supra,* merely to put the jury in the condition in which they were before they were sworn. It cannot be that setting aside the submission is tantamount to discharging the jury, for in the majority opinion and in the earlier cases it is said that after the submission is set aside the jury may be further examined on its *voir dire.* I do not know how such an examination could be conducted after the jury was discharged.

The majority opinion seems to hold that if the *defendant* wishes to examine a juror further, he must first move to withdraw the submission, but if the *state* wishes to show a legal necessity for discharging the juror, it must be shown, or as the majority opinion says, determined, before moving to withdraw the submission. How it could be shown or determined is not suggested, and the case cited to the proposition does not seem to point it out. I can find nothing in the cases which sustains the proposition that the parties should be bound by different rules. I can think of no reason for it—and none is given.

The court on its own motion could and should question a juror further if the ends of justice seem to require it. 50 C. J. S., Juries, §249, p. 1005. Whether the court should question a juror on its own motion before or after the submission is withdrawn is not suggested in the majority opinion, and perhaps should not be, since the question was not presented. However, in the

light of the present holding it presents a problem which is interesting to me and may prove most puzzling to trial courts in the future. It seems to me the cases indicate that before a juror is questioned further by either party or by the court for the purposes under consideration, the submission should first be withdrawn so that the juror may be questioned further on his *voir dire*. If, as a result, a legal necessity to do so appears, the juror should be discharged. If not, the trial should proceed before the same jury. In neither case could the defendant be prejudiced, and out of neither alternative could double jeopardy arise.

However, the important thing in this case, it seems to me, is that the appellant was in fact tried by the jury which he freely accepted and which was sworn to try the case, and by no other. Jeopardy attached once and once only. It terminated when the jury was discharged after the verdict. If there was an error in procedure, and I do not believe there was, it was an irregularity merely which deprived the appellant of no substantial right. *Lovato* v. *New Mexico, supra.*

There is no right to immunity from one trial. The right to immunity from a *second* prosecution for the same offense is a fundamental right which is firmly embedded both in the common law and in our constitution. I would not adulterate it. But neither would I extend it away beyond both the letter and the spirit of the constitutional provision.

I would affirm.

NOTE.—Reported in 102 N. E. 2d 225.