**William E. SIDES, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–9611–CR–730.

Supreme Court of Indiana.

April 3, 1998.

Kurt A. Young, Nashville, for Appellant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury convicted William E. Sides of attempted murder, a class A felony;[1] attempted robbery, as a class B felony;[2] attempted carjacking, a class B felony;[3] and carrying a handgun without a license, a class C felony.[4] The jury also found him to be a habitual offender.[5] His sentence totaled fifty-five years.

In this direct appeal, Sides raises three issues:

I. Whether the trial court administered the oath to the jury, and if not, whether such a failure is cause for a new trial;

II. Whether the trial court erred in allowing the State to amend the charging information on the habitual offender count after closing arguments; and

III. Whether the evidence was sufficient to support Sides' convictions of being a habitual offender and carrying a handgun without a license.

## Facts

The evidence most favorable to the verdict shows that on January 21, 1995, Sides approached Rayburn Washington in a White Castle parking lot located at 16th and Illinois Streets in Indianapolis. As Washington walked to his car, Sides attempted to get his attention. Washington ignored him and climbed into his car.

Sides continued to talk to Washington and tried to open his passenger door. Washington locked the door before Sides could open it. Sides then walked around the car and attempted to open the driver-side door, which also was locked. Sides persisted in talking to Washington. After he convinced him to roll down the window, Sides immediately placed a gun in his face. He ordered Washington to get out of his car, but Washington refused. Instead, he started his car and put it in reverse.

As the car rolled backwards, Sides grabbed Washington's coat and continued to point the gun at him. He again told Washington to get out of his car and threatened to shoot him if he did not comply. After Washington once more refused to exit, Sides shot him in the chest. Washington then stepped out of the car. Sides tried to push Washington out of the way, but Washington would not budge. Sides told him that he was crazy and fled the scene.

Washington left his car and walked into the restaurant. He showed off-duty India-

---

1. Ind.Code Ann. § 35–41–5–1 (West 1986); Ind. Code Ann. § 35–42–1–1 (West Supp.1997).

2. Ind.Code Ann. § 35–41–5–1 (West 1986); Ind. Code Ann. § 35–42–5–1 (West 1986).

3. Ind.Code Ann. § 35–41–5–1 (West 1986); Ind. Code Ann. § 35–42–5–2 (West Supp.1997).

4. Ind.Code Ann. § 35–47–2–1 (West Supp.1997).

5. Ind.Code Ann. § 35–50–2–8 (West Supp.1997).

napolis Police Department Officer Richard Kibbett that he had been shot. He described his assailant as a black male in a blue coat running eastbound from Illinois Street. Officer Kibbett radioed dispatch and gave them Washington's description of the shooter.

One block east of the shooting, IPD Officer Norris was making a routine traffic stop when he heard the radio dispatch. Realizing that only seconds earlier he had observed a man matching the description, Norris proceeded north on Illinois Street and turned east on 18th Street. As Norris drove across Meridian Street, he spotted Sides as he emerged from an alley. Sides was apprehended without incident, but denied any involvement in the shooting.

Although police failed to find a weapon on Sides, IPD Officer Norman Matthews drove two witnesses of the crime, Robert and Dorothy Ford, to the alleyway to identify the shooter. After both Fords positively identified Sides, he was taken into custody. The next day Washington also identified Sides as his assailant after viewing a six-photograph array.

## I. Failure to Administer the Jury Oath

Sides contends the trial court failed to administer the oath to the jury. He says that his conviction is thus a "nullity." We disagree.

■ Sides correctly asserts that the administration of the oath is more than a mere formality. As our Court of Appeals once observed, the oath serves the dual function of impressing upon the jury the solemnness of the trial and ensuring a defendant's right to an impartial jury. *Steele v. State*, 446 N.E.2d 353, 354 (Ind.Ct.App.1983) (citing *People v. Pribble*, 72 Mich.App. 219, 249 N.W.2d 363 (1976)). The oath also informs the defendant when jeopardy attaches. *Livingston v. State*, 544 N.E.2d 1364, 1366–67 (Ind.1989) (citing *Maddox v. State*, 230 Ind. 92, 102 N.E.2d 225 (1951)).

■ In this case, the record does not clearly indicate whether the trial court administered the oath to the jury.[6] Resolving this question of fact is not crucial, however, because Sides failed to raise his objection during trial. In *State v. Dolan*, 122 Ind. 141, 23 N.E. 761 (1890), this Court said:

[I]t does not appear from facts, as stated in the motion, that any motion or request was made at the trial that the jury be resworn, nor was there any objection made to proceeding with the trial, but without objection the defendant proceeded to trial; and he thereby waived any informality in the manner or time of swearing the jury.

122 Ind. at 144, 23 N.E. at 762 (citations omitted). Further, any objection to the competency of a jury is waived if the defendant fails "to avail himself of such objections at the proper time, after they have come to his knowledge." *Maddox*, 230 Ind. at 99, 102 N.E.2d at 228 (quoting *Adams v. State*, 99 Ind. 244, 245, (1884) (citations omitted)). Because Sides failed to avail himself of this argument during trial, this issue is waived.

## II. Amending the Habitual Offender Information

Sides next asserts that the trial court erred by allowing a late amendment to the habitual offender allegation. He says the State should not have been allowed to amend by changing a prior conviction from "auto theft" to "theft." He also alleges that the trial court acted as an advocate by amending the charging information.

■ Under Indiana Code § 35–34–1–5(c), an amendment to the charging information may occur at any time as long as it "does not prejudice the substantial rights of the defendant." Ind.Code Ann. § 35–34–1–5(c) (West Supp.1997). These substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge. *Hegg v. State*, 514 N.E.2d 1061,

6. There is a suggestion that the jurors were sworn. Jury Instruction No. 1 states, "You have been selected as juror and have taken an oath to well and truly try this case." (R. at 115). Jury Instruction No. 13 states, "When you were sworn to try this cause, you became a part of this Court and entrusted with the enforcement of the law and the administration of justice." (R. at 140). Further, Jury Instruction No. 24 provides, "this cause is submitted to you with confidence that you will faithfully discharge your sworn duty as jurors." (R. at 159). These three instructions, and others, surely conveyed to the jury that they were bound by their oaths to deliberate honestly.

1063 (Ind.1987). As we observed in *Martin v. State*, 537 N.E.2d 491, 494 (Ind.1989), if the amendment does not "affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Id.* Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *See McCollum v. State*, 582 N.E.2d 804, 814 (Ind.1991); *Miller v. State*, 563 N.E.2d 578, 582 (Ind.1990).

■ The record indicates that Sides was neither surprised nor prejudiced by this amendment. On January 23, 1995, the State filed the information charging Sides as a habitual offender. This information alleged that he had been convicted of three prior felonies: auto theft on April 3, 1990, auto theft on March 22, 1991, and possession of cocaine on May 6, 1993. (R. at 34).

In May 1995, Sides received copies of the informations for the prior felonies, the judgments of conviction, and their cause numbers. (R. at 71–72). These documents unequivocally demonstrated that Sides was not convicted of auto theft on March 22, 1991, but instead was convicted of theft on that date. (R. at 772, 776). The conviction date for the alleged auto theft is identical to the conviction date for the actual theft. The cause numbers are also identical. More importantly, Sides knew of the State's error. During closing arguments, Sides contended that although felonious theft was committed on that date, he did not commit auto theft. (R. at 800–01). He asserted that even if the mistake was inadvertent, the information had to be "perfect" under Indiana Code § 35–34–1–5. (R. at 801).

Sides' interpretation of Indiana Code § 35–34–1–5(c) is misguided. This section expressly allows for amendments so long as the substantial rights of defendants are not prejudiced. Our courts have held on numerous occasions that defendants are not prejudiced when the amendment is merely one of form and not substance. *See McCollum*, 582 N.E.2d at 814 (court did not err by amending conviction date on day of trial); *Cornett v. State*, 536 N.E.2d 501, 505 (Ind.1989) (amendment changing location of crime was not prejudicial); *Rainey v. State*, 557 N.E.2d

1071, 1075 (Ind.Ct.App.1990) (amendment on day of trial which "allowed the information to conform to documentary evidence" was not prejudicial). Consistent with these cases, we conclude that the deletion of the word "auto" from the information was one of form. Sides was neither surprised nor substantively affected by the State's amendment, and we find no error in allowing it.

Sides also contends that the trial court acted impermissibly by deleting the first auto theft from the information and by adding the words "a narcotic drug" instead of "cocaine" in the possession charge. According to Sides, this conduct amounted to advocacy by the trial court. In another section of his brief, however, Sides states that "[i]t is unknown how these changes came to be made." (Appellant's Br. at 26 n. 4). Without proof that these changes were made by the trial court, appellant has not presented a cogent argument as required by Indiana Appellate Rule 8.3. Therefore, this claim is waived. *Daniels v. State*, 683 N.E.2d 557, 558 n. 4 (Ind.1997).

### III. Sufficiency of the Evidence

Sides' final claim is that the evidence was insufficient to support convictions for carrying a handgun without a license and being a habitual offender. He says the fingerprint examiner did not properly identify him in court. Further, he contends that the arrest reports and orders of convictions were not sufficiently linked to show that Sides was the person convicted of each crime.

■ In examining a sufficiency of evidence claim, this Court will neither reweigh the evidence nor judge the credibility of witnesses. *See Jenkins v. State*, 686 N.E.2d 1278, 1281 (Ind.1997). Instead, we consider the evidence most favorable to the verdict and draw all reasonable inferences therefrom. *Id.* If substantial evidence of probative value exists to support the verdict, we affirm. *Id.*

■ Sides claims that the fingerprint expert did not positively identify him as the person who committed all three prior felonies. The expert testified that he obtained the right thumbprint from the "individual

sitting at defense counsel's table with the white striped shirt on." (R. at 760). Because three people were sitting at the defense table, says Sides, there was no proof that the thumbprint taken by the expert was in fact his.

This argument is unsupportable. The expert stated that the thumbprints from the three other arrest reports were made by the same person who was thumbprinted for this case. (R. at 762, 774, 783). That person was William Sides. (R. at 760). Defense counsel presumably would have objected if the person identified as William Sides was not actually William Sides.

The habitual finding also is supported by the judgments of conviction for each of the prior felonies. Although Sides points to several minor discrepancies between the arrest reports and orders of conviction, a jury could reasonably have found the proof adequate. The evidence was sufficient to support the convictions.

For the aforementioned reasons, we affirm the judgment of the trial court.

SULLIVAN, SELBY and BOEHM, JJ., concur.

DICKSON, J., concurs as to Parts I and III, and dissents as to Part II.