**Gilbert RAMON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 17A03–0707–CR–333.

Court of Appeals of Indiana.

June 10, 2008.

Adam C. Squiller, Taylor and Squiller, P.C., Auburn, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Gilbert Ramon was found guilty of Rape[1] as a class A felony, two counts of Criminal Deviate Conduct[2] as class A felonies, Criminal Confinement While Armed With a Deadly Weapon[3] as a class B felony, Intimidation Using a Deadly Weapon[4] as a class C felony, Pointing a Loaded Firearm[5] as a class D felony, and Battery Causing Bodily Injury[6] as a class A misdemeanor. Ramon raises the following restated issues:

1. Did the trial court properly allow the State to amend Counts 1, 2, and 3 prior to trial?

2. Do Ramon's convictions for rape and criminal deviate conduct subject him to double jeopardy?

3. Was Ramon's sentence appropriate?

We affirm.

Ramon met A.K. in October 2003. The two were roommates from July 2004 through December 2004. While they were roommates, Ramon and A.K. began an on-again, off-again sexual relationship that continued until 2006. On June 14, 2006, A.K. and Ramon went to the Oasis bar in St. Joe, Indiana to drink, play cards, and shoot pool. Around three a.m., as the Oasis was closing, Ramon and A.K. invited several individuals at the bar to Ramon's house for a bonfire. The only person who agreed to go was Brad Dangler. Dangler did not know the way to Ramon's house, so A.K. rode there with him.

When A.K. and Dangler arrived at Ramon's house, A.K. went inside and spoke with Ramon's brother Chris while Dangler and Ramon stood outside on the porch. After talking with Chris, A.K. went to find Dangler because she wanted to go home. Ramon told A.K. that Dangler had left. A.K. said that she was not feeling well and wanted to go home. Ramon stated that he wanted A.K. to stay for the night. When A.K. again indicated to Ramon that she wanted to leave, he grabbed her around the neck, took her to his bedroom, and pushed her on the bed. A.K. yelled to Chris for help and Ramon grabbed her face and dug his fingernails into her cheek. While pinning A.K. to the bed, Ramon removed A.K.'s pants. Ramon then proceeded to smack and punch A.K. in the face.

After hitting A.K. multiple times, Ramon ordered A.K. to perform oral sex. When A.K. refused, Ramon pointed at two guns that were sitting next to the bedroom door and told A.K. that he would shoot her if she did not comply. A.K. then per-

---

1. Ind.Code Ann. § 35–42–4–1 (West, PREMISE through 2007 1st Regular Sess.).

2. I.C. § 35–42–4–2 (West, PREMISE through 2007 1st Regular Sess.).

3. I.C. § 35–42–3–3 (West, PREMISE through 2007 1st Regular Sess.).

4. Ind.Code Ann. § 35–45–2–1 (West, PREMISE through 2007 1st Regular Sess.).

5. Ind.Code Ann. § 35–47–4–3 (West, PREMISE through 2007 1st Regular Sess.).

6. I.C. § 35–42–2–1 (West, PREMISE through 2007 1st Regular Sess.).

formed fellatio. While A.K. was fellating Ramon, he placed his hand near A.K.'s anus. At that point, A.K. stopped fellating Ramon and the two struggled. Ramon forced A.K. onto her stomach and inserted his penis into her anus. As A.K. continued to struggle, Ramon removed his penis and thrust his hand into A.K.'s anus. This caused A.K. to feel a "shock of pain" through her whole body. *Transcript* at 174. Ramon quickly removed his hand from A.K.'s anus and began hitting A.K. in the face. One of Ramon's blows caused A.K. to lose consciousness.

When A.K. came to, her head hurt and she felt like she was going to throw up. Ramon escorted A.K. to the bathroom. After wiping, A.K. noticed that there was blood. A.K. told Ramon that she wanted to go home, and he told her that she could not. Ramon grabbed A.K. by the neck, took her back to his bedroom, and forced her to have vaginal sex. A.K. began crying because Ramon was hurting her, so Ramon stopped and forced A.K. to perform fellatio. Ramon became angry and forced A.K. to have vaginal sex again. While they were having vaginal sex, Ramon told A.K. that he would shoot her and bury her in the backyard. When A.K. told Ramon to just kill her, he began hitting her again. A.K. yelled to Chris for help, but there was no response.

After he stopped hitting A.K., Ramon rolled over and seemed to fall asleep. When A.K. tried to get up, Ramon grabbed her by the hair, pulled her back on the bed, and started hitting her again. A.K. then began dry-heaving, and Ramon took her to the bathroom. When A.K. was finished in the bathroom, Ramon led her back to his bedroom where A.K. tried to grab Ramon's cell phone. He took the cell phone away and pushed A.K. onto the bed. The two fought again, and A.K. told Ramon to just shoot her because she did not want to hurt anymore. Ramon pinned A.K. to the bed on her stomach, grabbed a handgun from his dresser drawer, and pointed the gun at the back of A.K.'s head. Ramon then pulled the gun away, sat down on the side of the bed, and started crying. After A.K. pleaded with Ramon to let her go, Ramon told her to get dressed and drove her back to the Oasis. While they were driving back to the Oasis, Ramon told A.K. that if she talked to the police about what happened he would kill her.

After Ramon dropped her off, A.K. entered the Oasis, and individuals inside the bar called the police. A.K. testified that at that time her head hurt and that she was experiencing pain in her genital area and anus. When paramedics arrived, A.K. told them she had been raped. A.K. was transported to a nearby hospital and was later treated by nurse Michelle Ditton. Ditton testified that the left side of A.K.'s face was swollen and bruised. She counted nineteen separate bruises on A.K.'s body and noted that A.K. was experiencing vaginal and anal pain. Ditton stated that on A.K.'s cervix there were scattered "petechiae, which are hemorrhagic areas, that were all bleeding bright red blood." *Id.* at 131. A.K. also "had an abrasion all around the cervical eye, which was also bleeding bright red blood." *Id.* Ditton noted that A.K. had suffered severe injuries to her anus. She testified that A.K.'s entire anal ring was swollen and opined that it was one of the worst swellings of the anal ring she had ever seen. Ditton also noted that there was a large bruise on A.K.'s anal verge and ring and that there were multiple tears to the anus that were bleeding.

On June 16, 2006, the State charged Ramon as follows: Count 1—rape as a class B felony; Count 2—criminal deviate conduct as a class B felony for the oral sex; Count 3—criminal deviate conduct as a class B felony for the anal sex; Count

4—criminal confinement while armed with a deadly weapon as a class B felony; Count 5—intimidation using a deadly weapon as a class C felony; Count 6—pointing a loaded firearm as a class D felony; and Count 7—battery causing bodily injury as a class A misdemeanor. On August 21, 2006, the State filed a motion for leave to amend Counts 1, 2, and 3 by enhancing each of those counts from a class B felony to a class A felony. Defense counsel raised no objection to the motion, and the trial court granted the motion that same day.

On April 13, 2007, the trial court, in light of our Supreme Court's ruling in *Fajardo v. State*, 859 N.E.2d 1201 (Ind.2007), reversed its August 21, 2006 ruling allowing the State to amend Counts 1, 2, and 3 because the amendments were not timely filed thirty days before the omnibus date. On May 9, 2007, the State filed a motion asking the trial court to reconsider its April 13, 2007 ruling. The State pointed out that on May 8, 2007, the Indiana General Assembly amended Indiana Code Ann. § 35–34–1–5 (West, PREMISE through 2007 1st Regular Sess.), the statute that governs amendments to a charging information, and that under the amended statute the State's proposed amendments to Counts 1, 2, and 3 were permissible because they would not prejudice Ramon's substantial rights. The trial court held a telephonic hearing on the State's motion on May 11, 2007. That same day, the trial court issued an order granting the State's motion to reconsider and allowed the State to amend Counts 1,

2, and 3 by enhancing each count from a class B felony to a class A felony.

Ramon's jury trial began on May 15, 2007. The jury ultimately found Ramon guilty of all charges. A sentencing hearing was conducted on June 18, 2007. The trial court found three aggravating factors. It noted that Ramon had a criminal history, namely a conviction for class D felony fraud, and that he had committed the instant crimes while on probation. The trial court also found that "the criminal confinement and intimidation counts were aggravated beyond what it would've taken to establish the elements in those situations." *Id.* at 517. The court found no mitigating circumstances. The trial court entered the following sentences: Count 1—40 years; Count 2—40 years; Count 3—40 years; Count 4—12 years; Count 5—6 years; Count 6—2 years; and Count 7—1 year. The court specified that Counts 2 and 3 would be served concurrently but would be served consecutive to Count 1. Counts 4 through 7 were to run concurrently with each other but consecutive to Counts 1 through 3. Ramon's aggregate sentence was ninety-two years. This appeal ensued.[7]

1.

■■■ Ramon argues that the trial court abused its discretion when it allowed the State to amend Counts 1, 2, and 3. Amendments to a charging information are governed by I.C. § 35–34–1–5. At the time Ramon committed the offenses at issue here, I.C. § 35–34–1–5(a) permitted an amendment to the charging information at any time "because of any immaterial defect," and listed nine examples. Similarly,

7. We note that Ramon included in his appendix a copy of the presentence investigation report on white paper. We remind Ramon that Ind. Appellate Rule 9(J) requires that documents and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1), which includes presentence investigation reports, must be filed in accordance with Ind. Trial Rule 5(G). That rule provides that such documents must be tendered on light green paper or have a light green coversheet and be marked "Not for Public Access" or "Confidential". Ind. Trial Rule 5(G)(1).

subsection (c) permitted "at any time before, during or after the trial, ... an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." I.C. § 35–34–1–5(c). Subsection (b), however, expressly limited the time for certain other amendments as follows:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
> (1) thirty (30) days if the defendant is charged with a felony; or
> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
> before the omnibus date.

I.C. § 35–34–1–5(b).

The State initially filed charges against Ramon on June 16, 2006. Counts 1, 2, and 3 were filed as class B felonies. Shortly after the initial charges against Ramon were filed, the trial court set the omnibus date for the case as August 21, 2006. On that day, the State filed a motion for leave to amend Counts 1, 2, and 3 by enhancing each of those counts to class A felonies. The trial court granted the State's motion that same day.

In January 2007, our Supreme Court handed down its opinion in *Fajardo*. In that case, the court interpreted I.C. § 35–34–1–5(b) and held that when an individual is charged with a felony, amendments to matters of substance are permissible only if made more than thirty days before the omnibus date. *Fajardo v. State*, 859 N.E.2d 1201. In light of *Fajardo*, on April 13, 2007, the trial court revisited its August 21, 2006 ruling. The trial court found that in enhancing Counts 1, 2, and 3 from class B to class A felonies, the State made

amendments to matters of substance. Because the amendments were not made thirty days before the omnibus date, they were untimely. The trial court reversed its August 21, 2006 ruling and reverted Counts 1, 2, and 3 back to class B felonies.

In the meantime, in response to *Fajardo*, the Indiana General Assembly revised I.C. § 35–34–1–5. Subsection (b) of that statute now reads as follows:

> (b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
> (1) up to:
> (A) thirty (30) days if the defendant is charged with a felony; or
> (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
> before the omnibus date; or
> (2) before commencement of trial;
> if the amendment does not prejudice the substantial rights of the defendant.

I.C. § 35–34–1–5(b). Under the revised subsection (b), the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. The revised I.C. § 35–34–1–5 became effective on May 8, 2007.

On May 9, 2007, the State filed a motion asking the trial court to reconsider its April 13, 2007 ruling. The State argued that under the revised I.C. § 35–34–1–5, its proposed amendments to Counts 1, 2, and 3 were permissible because they were timely and would not prejudice Ramon's substantial rights. On May 11, 2007, the trial court held a telephonic hearing on the State's motion. During the hearing, Ra-

mon's counsel argued that application of the revised I.C. § 35–34–1–5 would violate the prohibition against ex post facto laws. The trial court issued an order that same day granting the State's motion to reconsider. The court rejected Ramon's ex post facto argument. It found that the State's proposed amendments to Counts 1, 2, and 3 did not violate Ramon's substantial rights largely because Ramon had "known of the State's intention to amend the charges since August 21, 2006." *Appellant's Appendix* Vol. 1 at 71. Ramon's jury trial began on May 15, 2007 with Counts 1, 2, and 3 listed as class A felonies.

Ramon and the State seem to agree that the revised I.C. § 35–34–1–5 that became effective on May 8, 2007 applies here. Ramon does not argue that application of the revised I.C. § 35–34–1–5 violates the prohibition against ex post facto laws. Nevertheless, both the United States Constitution and the Indiana Constitution prohibit ex post facto laws. *See* U.S. Const. Art. I, § 10, Ind. Const. art. 1, § 24. Therefore, because an ex post facto violation, if shown, would constitute fundamental error, we sua sponte address whether application of the revised I.C. § 35–34–1–5 in this case violated the prohibition against ex post facto laws. *See Nuerge v. State*, 677 N.E.2d 1043 (Ind.Ct.App.1997) (sua sponte addressing a possible ex post facto violation because such a violation would constitute fundamental error), *trans. denied.*

■ "The ex post facto clauses prohibit Indiana from enacting a law that 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Goldsberry v. State*, 821 N.E.2d 447, 464 (Ind.Ct. App.2005) (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1042 (Ind.Ct.App.1999),

*trans. denied*). The focus of the ex post facto inquiry is not on whether the legislative change causes a disadvantage. *Id.* Instead, we must determine whether the change "increases the penalty by which a crime is punishable" or "alters the definition of criminal conduct". *Id.*

■ We have previously stated that the constitutional prohibitions against ex post facto criminal sanctions require that criminal proceedings be governed by the statutory provision in effect at the time of the offense. *Settle v. State*, 709 N.E.2d 34 (Ind.Ct.App.1999). This suggests that in this case we should apply the version of I.C. § 35–34–1–5 in effect prior to May 8, 2007. We, however, have noted that the ex post facto clause "'does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.'" *Hayden v. State*, 771 N.E.2d 100, 102 (Ind.Ct.App. 2002) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), *trans. denied.* The clause is not designed "to limit legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.* "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.*

■ Our task here then is to determine whether I.C. § 35–34–1–5 and the General Assembly's revisions to that statute are procedural or substantive for purposes of the ex post facto provisions of both the Indiana and United States Constitutions. We have previously noted that "'[p]rocedural, adjective or remedial law is that portion of the law which prescribes *the method of enforcing a right or obtaining a redress* for the invasion of that right. Substantive law, on the other hand, is that portion of the law which *creates, defines and regulates rights.*'" *Hayden v. State*, 771 N.E.2d at 102 (quoting *State v. Fletch-*

*er,* 149 Ariz. 187, 717 P.2d 866, 870 (1986)) (emphasis in original). "An amendment is 'procedural in nature for purposes of the ex post facto doctrine, and may be applied to crimes committed before the effective date,' if it 'neither changes the elements of the crime nor enlarges its punishment.'" *Weaver v. State,* 845 N.E.2d 1066, 1070 (Ind.Ct.App.2006) (quoting *Ritchie v. State,* 809 N.E.2d 258, 264 (Ind.2004), *cert. denied* 546 U.S. 828, 126 S.Ct. 42, 163 L.Ed.2d 76 (2005)), *trans. denied.*

Here, the revised version of I.C. § 35–34–1–5 that became effective on May 8, 2007 defines the procedures the State must follow to amend a charging information. The revised statute creates no new crimes, does not change the elements of any crime, and does not alter the sentencing statutes. Given the procedural function served by I.C. § 35–34–1–5, we conclude that the application of the revised I.C. § 35–34–1–5 in this case did not violate the ex post facto provisions of either the Indiana or United States Constitutions.

We now consider whether the trial court abused its discretion when it allowed the State to amend Counts 1, 2, and 3. The State initially argues that Ramon has waived this argument by failing to request a continuance after objecting to the State's amendments to the charging information. In *Fuller v. State,* 875 N.E.2d 326, 331–32 (Ind.Ct.App.2007), *trans. denied,* however, we held that appellant "was not required to move for a continuance in order to preserve his objection to the State's late amendment of the charging information...." Therefore, Ramon has not waived this issue by not requesting a continuance.

 The trial court found and the parties agree that the State's amendments to Counts 1, 2, and 3 were amendments to matters of substance. As we previously noted, under the revised I.C. § 35–34–1–5(b), the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Jones v. State,* 863 N.E.2d 333 (Ind.Ct. App.2007). Our Supreme Court has stated that "[u]ltimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Sides v. State,* 693 N.E.2d 1310, 1313 (Ind.1998), *abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201.

Ramon argues that his substantial rights were violated because he was not given sufficient notice of the amended charges and was not given an opportunity to be heard regarding the amendments. He specifically states that he was prejudiced by the amended charges because his counsel had to alter his theory of defense only days before trial. Ramon, however, does not state what his theory of defense was or how the amended charges altered that theory. Ramon's counsel may have had to ask additional questions regarding the new allegations made in the amended charges, in particular questions regarding the use of deadly weapons and A.K.'s injuries. Ramon, though, does not show how this denied him a reasonable opportunity to defend against the charges. The new allegations made in Counts 1, 2, and 3 were allegations that Ramon already had to defend against because they were elements of the crimes he was charged with in Counts 4, 5, 6, and 7.

Ramon had sufficient notice of the amended charges. As of August 21, 2006, Ramon knew that the State intended to amend Counts 1, 2, and 3. From August 21, 2006 until April 13, 2007, Counts 1, 2, and 3 were amended to class A felonies. During this almost eight-month period, Ramon had a reasonable opportunity to prepare a defense against the class A felony charges. The record indicates that during this period the parties were conducting discovery and that Ramon's counsel deposed A.K. and Dangler in November 2006.

■ Ramon also argues that he was not afforded an opportunity to respond to the State's proposed amendments to Counts 1, 2, and 3. A trial court need not " 'set a hearing in every instance that an information is sought to be amended after ... the omnibus date. . . . Rather, the requirement of an 'opportunity to be heard' is satisfied when the defendant is given adequate time to object and request a hearing after proper notice.' " *Tripp v. State,* 729 N.E.2d 1061, 1065 (Ind.Ct.App.2000) (quoting *Davis v. State,* 580 N.E.2d 326, 328 (Ind. Ct.App.1991)), *abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201. Here, Ramon was afforded an opportunity to respond to the State's proposed amendments. The trial court held a telephonic hearing on the State's motion on May 11, 2007 at which Ramon's counsel was present and participated. Therefore, we conclude that the trial court did not abuse its discretion when it allowed the State to amend Counts 1, 2, and 3 because the amendments to those counts did not prejudice Ramon's substantial rights.

### 2.

■ Ramon contends that his convictions for rape in Count 1 and criminal deviate conduct in Counts 2 and 3 violate double jeopardy because there is a reasonable possibility that the same bodily injury was used to enhance those convictions from class B felonies to class A felonies. "Under the rules of statutory construction and common law that constitute one aspect of Indiana's double jeopardy jurisprudence, where one conviction 'is elevated to a class A felony based on the same bodily injury that forms the basis of [another] conviction, the two cannot stand.' " *Strong v. State,* 870 N.E.2d 442, 443 (Ind.2007) (quoting *Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002)). To remedy such a double jeopardy violation, a court may reduce the sentencing classification on one of the offending convictions. *Id.* "When determining what facts a jury used to establish each element of an offense, 'we consider the evidence, charging information, final jury instructions ... and arguments of counsel.' " *Smith v. State,* 872 N.E.2d 169, 177 (Ind.Ct.App.2007) (quoting *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind.Ct.App. 2007)), *trans. denied.*

Rape is a class A felony when it is committed using or threatening the use of deadly force or it results in serious bodily injury. I.C. § 35–42–4–1(b). Serious bodily injury includes bodily injury that causes extreme pain. Ind.Code Ann. § 35–41–1–25(3) (West, PREMISE through 2007 1st Regular Sess.). In the amended Count 1, the State alleged that Ramon committed rape by knowingly or intentionally having sexual intercourse with A.K. when A.K. "was compelled by physical force or imminent threat of physical force, including the threat of deadly force, while armed with a deadly weapon and resulting in serious bodily injury to A.K. . . . ." *Appellant's Appendix* Vol. 1 at 36. The evidence introduced at trial indicates that when Ramon raped A.K. he caused her to suffer serious bodily injury. A.K. testified that after Ramon dropped her off at the Oasis, she experienced pain in her genital area.

Ditton stated that on A.K.'s cervix there were scattered "petechiae, which are hemorrhagic areas, that were all bleeding bright red blood." *Transcript* at 131. A.K. also had an abrasion around the cervical eye that was bleeding.

Like rape, criminal deviate conduct is a class A felony when it is committed by using or threatening the use of deadly force or it results in serious bodily injury. I.C. § 35–42–4–2(b). In the amended Count 2, the State alleged that Ramon committed criminal deviate conduct when he knowingly or intentionally caused A.K. "to perform or submit to deviate sexual conduct when the other person was compelled by physical force or imminent threat of physical force to place her mouth on the defendant's penis, and by threatening the use of deadly force, which was to kill her...." *Appellant's Appendix* Vol. 1 at 37. At trial, the State introduced evidence that Ramon forced A.K. to perform oral sex by threatening the use of deadly force. A.K. testified that Ramon ordered her to perform fellatio. When A.K. refused, Ramon pointed to two guns sitting next to his bedroom door and told A.K. he would shoot her if she did not comply.

In amended Count 3, the State alleged that Ramon committed criminal deviate conduct when he knowingly or intentionally caused A.K. "to perform or submit to deviate sexual conduct, which was that he penetrated her anus with his penis or an object, when the other person was compelled by physical force or imminent threat of physical force, and the threat of deadly force, that he would kill her, and it resulted in serious bodily injury to A.K. ...." *Id.* at 38. The evidence introduced at trial indicates that when Ramon inserted his penis and/or his hand into A.K.'s anus he caused her serious bodily injury. A.K. testified that she felt pain in her anus. Ditton noted that A.K.'s entire anal ring

was swollen, that she had a large bruise on her anal verge and ring, and that there were multiple tears to the anus that were bleeding.

In this case, we feel confident that the same serious bodily injury and/or threat of deadly force was not used by the jury to enhance Ramon's convictions for rape and criminal deviate conduct from class B felonies to class A felonies. Therefore, Ramon's convictions for rape and criminal deviate conduct do not violate double jeopardy.

3.

Ramon next argues that the trial court erred in several respects when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482 (Ind.2007). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

In sentencing Ramon, the trial court found three aggravating factors: (1) Ramon's criminal history, which consisted of a conviction for class D felony fraud; (2) that Ramon committed the instant crimes while on probation; and (3) that "the criminal confinement and intimidation counts were aggravated beyond what it would've taken to establish the elements in those situations." *Transcript* at 517. Ramon takes issue with the third aggravating circumstance. He argues that this aggravating factor violated his Sixth Amendment right to a jury trial because it was found by the trial court and not by the jury.

The United States Supreme Court has held that the Sixth Amendment right to a jury trial requires that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Indiana General Assembly

> responded to *Blakely* by eliminating the requirement that the sentencing judge find aggravating circumstances before imposing a sentence greater than the presumptive. Effective April 25, 2005, the legislature amended the sentencing statutes to replace "presumptive" sentences with "advisory" sentences and to authorize the sentencing court in its discretion to impose any sentence within the statutory range.

*Robertson v. State*, 871 N.E.2d 280, 283 (Ind.2007). So long as the sentence imposed by the trial court remains within the statutory range, a defendant's Sixth Amendment right to a jury trial is not violated. Here, Ramon's sentences are all within the statutory range. Therefore, his rights under the Sixth Amendment were not violated.

Additionally, we would note that this was a proper aggravating factor. Under Ind.Code Ann. § 35–38–1–7.1(a)(1)(B) (West, PREMISE through 2007 1st Regular Sess.), a trial court may consider as an aggravating circumstance the extent to which the harm caused by the defendant exceeded that necessary to meet the elements of the offense.

 Ramon contends that the trial court erred when it gave too much weight to his criminal history has an aggravating circumstance. Our Supreme Court has previously explained that under our advisory sentencing scheme, trial courts no longer have any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence. *Anglemyer v. State*, 868 N.E.2d 482. Therefore,

the weight the trial court gives to any aggravating circumstances is not subject to appellate review. *Id.*

 Ramon asserts that the fact that he was on probation when he committed the instant offenses is not a proper aggravating factor. He states, "Although the trial court listed them separately, the fraud incident and [Ramon's] resulting probation status constitute in essence one factor." *Appellant's Brief* at 33–34. We, however, have previously indicated that the fact that a defendant committed a crime while on probation is a factor distinct from the defendant's criminal history. *Barber v. State*, 863 N.E.2d 1199 (Ind.Ct. App.2007), *trans. denied.* The fact that Ramon violated his probation when he committed the instant offenses is a proper aggravating circumstance. *See* I.C. § 35–38–1–7.1(a)(6).

 Ramon last argues that the only valid aggravating factor found by the trial court was his criminal history and that the trial court abused its discretion when it sentenced him to enhanced and consecutive sentences based solely on this factor. We have already determined that all three of the aggravating factors found by the trial court were proper. These aggravating factors were sufficient to justify imposing enhanced and consecutive sentences.

To the extent that Ramon is arguing that his sentence is inappropriate, we note that the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Anglemyer v. State*, 868 N.E.2d 482. That rule provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the

offense and the character of the offender." Ind. Appellate Rule 7(B).

We begin by considering the nature of the offense. Here, Ramon forced A.K. to remain in his home by threatening to kill her. He then proceeded to rape A.K. twice and forced her to perform oral and anal sex. Throughout the evening, Ramon hit A.K. in the face multiple times such that on one occasion A.K. lost consciousness. At one point, Ramon held a gun to A.K.'s head and threatened to kill her. Ramon caused severe injuries to A.K.'s cervix and anus. The nature of Ramon's offenses is serious.

As to Ramon's character, we note that he does have a conviction for class D felony fraud and that he committed the instant offenses while on probation. The fact that Ramon would brutally rape and beat A.K., a person with whom he had previously been in a sexual relationship and presumably considered at the very least a friend, does not reflect well on his character. After considering the nature of the offenses and the character of the offender, we cannot say that Ramon's sentence is inappropriate. Therefore, the trial court did not abuse its discretion in sentencing Ramon.

Judgment affirmed.

MATHIAS, J., concurs.

ROBB, J., dissents with opinion.

ROBB, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the application of the amended version of Indiana Code section 35–34–1–5 does not violate the prohibition of ex post facto laws as applied to Ramon.

Generally, "criminal proceedings [are] governed by the statutory provision in effect at the time of the offense." *Mudd v. State*, 483 N.E.2d 782, 785 (Ind.Ct.App. 1985); *see also Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007) (noting "the long-standing rule that the sentencing statute in effect at the time a crime is committed governs the sentence for that crime"). However, I recognize that certain statutory amendments affecting criminal procedure do not affect a defendant's substantial rights and therefore do not violate the ex post facto clause. *See Watts v. State*, 229 Ind. 80, 92 95 N.E.2d 570, 575 (1950); *Iseton v. State*, 472 N.E.2d 643, 651 (Ind.Ct.App.1984) (statutory amendment providing for six-person jury did not violate ex post facto clause, as "no substantial right was affected").

Although the majority opinion seems to imply that an essential inquiry is determining whether the amended statute is procedural or substantive, our supreme court has recognized that the prohibition of ex post facto laws "is not limited to substantive statutes, as some cases have previously held." *Stroud v. State*, 809 N.E.2d 274, 288 (Ind.2004); *see also Collins v. Youngblood*, 497 U.S. 37, 46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) ("[S]imply by labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the Ex Post Facto Clause."); *Watts*, 229 Ind. at 92, 95 N.E.2d at 575 ("Where a law relates to a matter of procedure only, and no substantial right is taken away, it is not ex post facto." (emphasis added)). Instead, "[a]n ex post facto law is one which applies retroactively to disadvantage an offender's substantial rights." *Armstrong v. State*, 848 N.E.2d 1088, 1092 (Ind.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 513, 166 L.Ed.2d 370 (2006). Stated another way, "[a] law is ex post facto if it 'substantially disadvantage[s][a] defendant because it increase[s] his punishment, change[s] the elements of or ultimate facts necessary to prove the offense, or deprive[s][a] defendant of some defense or lesser punishment that was available at the time of the crime.'" *Stroud*, 809 N.E.2d at 288 (quot-

ing *Crawford v. State,* 669 N.E.2d 141, 150 (Ind.1996)). The fundamental inquiry is whether the retroactive law alters a defendant's substantial right. *See Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 67 L.Ed.2d 17 ("Alteration of a substantial right, however, is not merely procedural, even if the statute takes a seemingly procedural form."); *id.* at 30 n. 13, 101 S.Ct. 960 (noting that an ex post facto analysis "is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred").

Here, the statute in place at the time of Ramon's offense, and through much of the pre-trial proceedings, provided a procedural bar to the State's ability to amend charging informations as to matters of substance after a certain point, namely, thirty days prior to the omnibus date. I find this situation analogous, although perhaps not identical, to situations involving amendments to statutes of limitations, which also constitute procedural bars to a state's ability to levy charges against a defendant. An amendment to a statute of limitations does not violate the prohibition against ex post facto laws if the amendment was made prior to the running of the statute of limitations in place at the time the defendant committed the crime. *See United States v. Gibson,* 490 F.3d 604, 609 (7th Cir.2007) ("[I]t is well settled law that applying procedural statutes ..., which effectively enlarge[ ] the limitations period, does not violate the ex post facto clause so long as the statute is passed before the given prosecution is barred."), *cert. denied,* —— U.S. ——, 128 S.Ct. 1646, 170 L.Ed.2d 353 (U.S., 2008); *Minton v. State,* 802 N.E.2d 929, 934–35 (Ind.Ct.App.2004), *trans. denied.* However, when the statute is passed after the given prosecution is barred, the statute violates the prohibition against ex post facto laws as applied to

that defendant. *Stogner v. California,* 539 U.S. 607, 632–33, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) (concluding that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution"); *State v. Garcia,* 285 Kan. 1, 169 P.3d 1069, 1075 (2007) (holding that the application of a statute of limitations violated the ex post facto clause as applied to the defendant, as it "resurrects a previously time-barred prosecution").

Here, the State's ability to amend the charging information to charge Ramon with Class A felonies, instead of Class B felonies, was foreclosed at the time the legislature amended section 35–34–1–5. *See Fajardo,* 859 N.E.2d at 1208. Thus, as in the statute of limitations cases, the amended statute permitted "punishment that the [trial court] lacked the power to impose at the time the legislature acted." *Stogner,* 539 U.S. at 615, 123 S.Ct. 2446. Indeed, at the time the legislature acted, the trial court had already specifically found that the State's amended informations were not timely and were therefore barred. Therefore, by applying the amended version of the statute to Ramon's situation, the trial court impermissibly allowed the State to "resurrect an expired criminal charge." *United States v. Leo Sure Chief,* 438 F.3d 920, 924 (9th Cir. 2006). As Judge Learned Hand explained:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it ex-

tended beyond the time first set, or, if it does, the stake forgives it. *Falter v. United States*, 23 F.2d 420, 425–26 (2d Cir.1928). Here, as the time in which the State was permitted to amend the charging information as to matters of substance had expired, Ramon rightly should have been able to assume that he was safe from the State's pursuit of additional or enhanced charges within the instant suit. Allowing the legislature's amendment to deprive Ramon of a valid defense he had against the State's addition of charges strikes me as fundamentally unfair, and I conclude that it violates of the prohibition of ex post facto laws. Therefore, I would reverse Ramon's convictions on counts 1, 2, and 3, and remand with instructions that the trial court enter judgments of conviction on these counts as Class B felonies and sentence Ramon accordingly.

Given my resolution of this issue, I would not reach Ramon's sentencing argument. However, I am troubled by the majority's discussion of Ramon's criminal history, which appears to consist of a single conviction of fraud. Our supreme court has established a standard for assessing a defendant's criminal history; such history "is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind.2006). I find this conviction unrelated in nature or seriousness when compared to Ramon's instant offenses. Under the presumptive sentencing scheme, it was a well-established rule that a relatively minor and unrelated criminal history was not a significant aggravating circumstance that would support an enhanced sentence. *See Taylor v. State*, 840 N.E.2d 324, 341 (Ind. 2006); *Ruiz v. State*, 818 N.E.2d 927, 929

(Ind.2004); *Vasquez v. State*, 762 N.E.2d 92, 97 (Ind.2001) ("[O]ne prior conviction for driving while intoxicated 'is not a significant aggravator' in the context of determining sentence for a murder conviction." (quoting *Wooley v. State*, 716 N.E.2d 919, 929 (Ind.1999))); *Wooley*, 716 N.E.2d at 929; *Roney v. State*, 872 N.E.2d 192, 203–04 (Ind.Ct.App.2007) (holding previous conviction of forgery should not be considered a significant aggravating circumstance in the context of a defendant convicted of murder), *trans. denied*; *Traylor v. State*, 817 N.E.2d 611, 622 (Ind.Ct.App. 2004), *trans. denied*. However, I recognize that under the advisory sentencing scheme, we no longer review the weight given to aggravating circumstances in regard to a given sentence, and that a defendant may challenge aggravators only to the extent that they are not supported by the record or are "improper as a matter of law." *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. Our supreme court has indicated that a minor and non-related criminal history, although not a significant aggravator, is not an *improper* aggravator. *See Taylor v. State*, 840 N.E.2d 324, 341 (Ind.2006) ("While Taylor's prior criminal history is a valid aggravating circumstance, it would not support a maximum sentence because the crimes were not particularly grave or related to his murder conviction."). Therefore, although I recognize the apparent incongruity between stating that a trial court is required to identify only "significant" aggravating and mitigating circumstances, *see Anglemyer*, 868 N.E.2d at 490, but finding an abuse of discretion regarding the finding of aggravating circumstances only when they are "improper as a matter of law," I must agree that a trial court cannot be said to have abused its discretion by identifying a

minor and unrelated criminal history as a reason for ordering a particular sentence.

However, the recent changes in our sentencing laws had no impact on a trial court's decision regarding whether to order a defendant's sentences to run consecutively or concurrently. *See Neff v. State,* 849 N.E.2d 556, 562 (Ind.2006) (holding that aggravators that are invalid under *Blakely*[8] may be used to impose consecutive sentences); *cf. Anglemyer,* 868 N.E.2d at 490 ("We hasten to reiterate that the 2005 amendments were designed to rectify the Sixth Amendment problem that *Blakely* presented. We discern no legislative intent otherwise to alter fundamentally the trial procedure for sentencing criminal defendants."). A criminal history is not always an aggravating circumstance sufficient by itself to support consecutive sentences. *Cf. Bryant,* 841 N.E.2d at 1158 ("We conclude that the simple fact of a criminal history, *when taken into consideration with* a factor that demonstrates some increased degree of culpability such as lying in wait, is sufficient to support the decision to impose consecutive sentences." (Emphasis added.)); *Frentz v. State,* 875 N.E.2d 453, 470 (Ind.Ct.App.2007) (analyzing the weight of a defendant's criminal history before holding the aggravator sufficient to support consecutive sentences), *trans. denied.* For example, the sole aggravating circumstance of an insignificant criminal history along with significant mitigating circumstances would not support consecutive sentences. *Cf. Wentz v. State,* 766 N.E.2d 351, 359 (Ind.2002) (recognizing that where the trial court finds the weight of the aggravators and mitigators to balance, it may not impose consecutive sentences). Therefore, I disagree with the majority's implication that Ramon's crimi-

nal history, standing alone, would support consecutive sentences. However, as other aggravating circumstances exist, I agree that the trial court had a sufficient basis to support consecutive sentences. *See Bryant,* 841 N.E.2d at 1158.

Also, the change in Indiana's sentencing statutes did not affect our ability to review and revise sentences under Indiana Appellate Rule 7(B). *See Anglemyer,* 868 N.E.2d at 491 ("Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution 'authorize independent appellate review and revision of a sentence imposed by the trial court." (quoting *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006))). The standard established by our supreme court for analyzing a defendant's criminal history, although not relevant when determining whether the trial court abused its discretion, remains applicable to our analysis of the defendant's character. That is, although all criminal histories are equal for purposes of abuse of discretion review, such is not the case for Rule 7(B) analysis. As "the advisory sentence is the starting point in our consideration of an appropriate sentence for the crime committed," *Gervasio v. State,* 874 N.E.2d 1003, 1005 (Ind.Ct.App.2007), a criminal history deemed insignificant under the applicable standard, by itself, should not render a sentence in excess of the advisory appropriate. *See Duncan v. State,* 857 N.E.2d 955, 960 (Ind.2006) (analyzing the defendant's sentence under Rule 7(B) and recognizing that the defendant's "prior convictions and charges were neither sufficiently weighty or similar to the current offense to justify enhancing the sentence."); *Prickett v. State,* 856 N.E.2d

8. *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that any fact used to enhance a sentence

above the statutory maximum must be either admitted by the defendant or found by the trier of fact beyond a reasonable doubt).

1203, 1209 (Ind.2006) (citing Rule 7(B), and then "recognizing that a defendant's criminal history can be a valid aggravating circumstance, [but] we find that it is of little weight in the instant case").

Although I would not consider Ramon's insignificant criminal history as a justification for his sentence, I agree with the remainder of the majority's analysis under Rule 7(B), and, if I reached this issue, would also conclude that Ramon has failed to meet his burden of persuading this court that his sentence is inappropriate given the nature of the offenses and his character.

