Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 05 2013, 5:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN C. BOHDAN**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| A.C. JAMES, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1304-CR-108 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1203-FB-41

**November 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

AC James appeals his conviction of Murder[1] and Criminal Recklessness,[2] a class D

felony, presenting the following restated issues for review:

1. Did the trial court err in permitting the State to add a charge of murder on the eve of trial?

2. Was the evidence sufficient to prove James's identity as the perpetrator of these offenses?

We affirm.

The facts favorable to the convictions are that on February 3, 2012, Michael Lewis

and Leuvenia Ellis (Ellis) stopped at a gas station in Fort Wayne, Indiana, where they found a

cell phone. When they left to go to the home of Ellis's grandmother, they took the phone

with them. Kyree Ellis (Kyree) and Andrew Whitt met them at Ellis's grandmother's home.

While there, someone called and text-messaged the phone that Lewis and Ellis had found,

and asked that it be returned. Lewis spoke with the caller and informed him that he wanted

to "get some money for finding it." *Transcript* at 152. The two arranged to meet at the gas

station where Lewis had found the phone in order to make the exchange. Lewis borrowed

Ellis's car to drive to the gas station. Kyree and Whitt went with him. Whitt sat in the front

passenger seat, while Kyree sat in the rear passenger seat. Lewis arrived at the gas station

first and sat in the car, waiting on the caller. The caller, James, walked up to Lewis's

vehicle, whereupon Lewis asked James for money in exchange for return of the phone. The

two argued momentarily before James said "fuck the phone", and then walked away. *Id.* at

---

[1] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current with all 2013 legislation).
[2] I.C. § 35-42-2-2 (West, Westlaw current with all 2013 legislation).

117. Lewis drove away, and James got into a two-toned truck he had driven to the gas station and chased them. After the chase had gone on for several minutes, Whitt heard a shot and the rear window of Ellis's vehicle shattered. Kyree said, "I'm hit." *Id.* at 119. Kyree died just seconds after he was shot. Lewis drove to the house of Ellis's grandmother. On the way there, Lewis called 911 and asked that an ambulance meet them at Ellis's grandmother's house.

When they arrived, Whitt and Lewis got out of the car, ran into the house, and told them Kyree had been shot. Ellis ran out to her vehicle, where she saw Lewis shaking an unresponsive Kyree. Ellis decided to drive Kyree to the hospital herself. She drove away with Kyree in the vehicle. As Ellis drove away, she saw the headlights of a vehicle approaching rapidly from behind her. She heard a shot and called 911. When she turned a corner, Ellis looked back and saw a long-bodied pickup truck, two-tone in color, behind her. She drove on to the hospital.

The end of the chase was recorded by a gas station's surveillance cameras. That footage was shown on the news that evening, and was observed by Albert Smith, who recognized the pickup truck as his. He had loaned the truck to James earlier in the day because James was moving. After seeing the report on television, Smith contacted James and asked him to return the truck. During that conversation, James told Smith that several young men had approached him at a gas station and claimed he owed them money. James told Smith that he had to pull his gun to scare them away. James failed to return the truck. Accordingly, the following day, Smith went to James's home and retrieved it. Smith told

3

James that he knew what James had done because he saw on the news that his truck was involved in a shooting. Smith also informed James that the victim of the shooting had died. James acted surprised, but did not say anything.

The following day, Smith took the truck to the police and permitted them to examine it. Police recovered a .40 caliber shell casing from the pocket of the driver-side door. The casing was stamped "Federal 40 Smith and Wesson or S and W [.]" *Id.* at 350. A subsequent search of James's home revealed an empty box of .40 caliber Federal brand ammunition.

In March 2012, James was charged with aggravated battery and criminal recklessness. On February 8, 2013, the State sought to amend the charging information to add a charge of murder. Trial was scheduled for February 12, 2013. The trial court permitted the amendment and added the charge. Following a jury trial, James was convicted as charged. The trial court merged the convictions for murder and aggravated battery, and sentenced James to fifty-five years imprisonment for murder and one year for criminal recklessness, with those sentences to be served consecutively.

1.

James contends the trial court erred in permitting the State to amend the charging information over his objection just four days before trial was to commence. Ind. Code Ann. § 35-34-1-5(b)(2) (West, Westlaw current with all 2013 legislation) provides that an indictment or information may be amended in matters of substance before the commencement of trial "if the amendment does not prejudice the substantial rights of the defendant." *See Ramon v. State*, 888 N.E.2d 244 (Ind. Ct. App. 2008). This court has held

4

that, since I.C. § 35-34-1-5 was amended to its current form, effective May 8, 2007, "a defendant's failure to request a continuance after a trial court allows a pretrial substantive amendment to the charging information over defendant's objection results in waiver." *Wilson v. State*, 931 N.E.2d 914, 918 (Ind. Ct. App. 2010), *trans. denied*. James declined the opportunity to request a continuance in order to give himself an opportunity to prepare a defense for the additional charge of murder, but chose not to do so. Accordingly, James has waived this issue for appellate review. *See Wilson v. State*, 931 N.E.2d 914.

2.

James contends the evidence was not sufficient to prove his identity as Kyree's murderer. Specifically, James claims he was convicted on the strength of "extremely thin circumstantial evidence." *Appeal Brief* at 9. Our standard when reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted). Much of James's claim centers upon the circumstantial nature of the evidence identifying him as the perpetrator. In this regard, we note that our Supreme Court has stated:

> [a] conviction for Murder may be based purely on circumstantial evidence. We

will not disturb a verdict if the jury could reasonably infer that the defendant is guilty beyond a reasonable doubt from the circumstantial evidence presented. On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence.

*Moore v. State,* 652 N.E.2d 53, 55 (Ind. 1995).

At trial, Lewis and Witt both identified James as the man who met them at the gas station and with whom Lewis argued about the return of the cell phone. When he left the gas station, Lewis saw James behind him get into a two-toned pickup truck and gave chase when Lewis drove away. Neither Lewis nor Whitt saw anyone else in the truck. During the chase, a shot was fired at the rear of Ellis's vehicle, striking and killing Kyree. Bystanders reported seeing vehicles generally matching the description of Ellis's vehicle and James's truck, with the truck pursuing the other vehicle. They described hearing a "very loud" "pop" sound, after which the truck screeched its tires and sped away. *Transcript* at 184. A surveillance camera recorded the end of the chase, clearly depicting the distinctively painted truck that Smith testified he had loaned to James that day. Smith recognized his truck in the surveillance video. Smith told James he had a confrontation with several men at a gas station, during which he had drawn a gun. Police found a .40 caliber shell casing in the pocket of the driver-side door of Smith's truck upon searching it shortly after the incident. A search of James's home produced an empty box of ammunition of that type and caliber. From this evidence, the jury could reasonably infer that James was the person who fired the shots into Ellis's vehicle while he was driving Smith's truck, and that he used ammunition of the kind contained in the box found in James's home. The evidence was sufficient to support

6

James's identification as the person who shot and killed Kyree.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.